Freeman vs. Norwell.

HENRY FREEMAN, plaintiff in error, vs. THOMAS B. NORWELL, defendant in error.

If, in trover and bail under the Act of 1821, the defendant proves unable to give the bond, and the plaintiff gives it, and receives possession of the negroes, and then dismisses his action, and fails to restore the negroes to the defendant, such dismissal and failure amount to a breach of his bond.—BENNING J.

Trover, from Lincoln county. Decided by Judge THOMAS, April Term, 1858.

An action was brought in the Court below by Thomas B. Norwell, against Henry Freeman, to recover the penalty under a bond, on account of the breach of the condition of the said bond.

The condition of the bond was as follows:

" The condition of the above obligation is such, that where-

as, the said Yancey G. Freeman, committee as aforesaid, did commence his action of trover against the said Thomas B. Norwell, returnable to the March Term of the Superior Court of said county, 1857, for three certain slaves, to-wit: Jane, a woman about thirty-eight years of age, of dark complexion, and Crese, a woman about twenty-eight years old, and her boy child (name not known,) about five years old, of the value of $1,600; and the said Thomas B. Norwell having failed and refused to give bond and security for the forthcoming of said negroes, according to law. Now, should the said Yancy G. Freeman, well and truly produce said negroes to answer such judgment, execution or decree, as may be issued or rendered in the case, and well and truly pay the eventual condemnation money recovered in said case, then this obligation to be void, else to remain in full force and virtue."

The plaintiff in his declaration, after setting out the above condition, stated that the condition of the bond had been violated; the said Yancy G. Freeman, for whom, and with whom the said Henry Freeman became jointly and severally bound, having dismissed his action of trover, and had judgment of dismissal entered on the minutes of the said Court, and a judgment for the costs of said suit rendered against him, on the 24th day of March, 1858; and that on the 2d day of April, 1858, he (the plaintiff,) demanded the said negroes, and the said Henry Freeman refused to deliver the same, having previously removed them to the State of South Carolina, the residence of the principal, in order to prevent the plaintiff from recovering the same, according to his undertaking.

To this declaration, the defendant demurred, on the ground that the same was not sufficient in law to enable the plaintiff to maintain his action.

After argument, the Court overruled the demurrer, and the defendant excepted, and filed his bill of exceptions, assigning the same as error.

Freeman vs. Norwell.

Stephens. for plaintiff in error.

Reese, *contra.*

*By the Court.*—Benning, J. delivering the opinion.

Norwell, the defendant in the original action, having failed to give the bond required to be given by the Act, (of 1821,) Yancy G. Freeman, the plaintiff in that action, gave it, and thereupon, received the possession of the negroes for which the action was brought, Yancy G. Freeman then dismissed his action, (a judgment of dismissal being entered,) and, instead of restoring the negroes to Norwell, held on to them.

Was this a breach of that condition of his bond, which required, that he should " produce said negroes, to answer such judgment, execution, or decree, as" might " be issued or rendered in the case ?"

I think that it was. I think, that *the judgment* of dismissal by itself, gave to Norwell the right to an *immediate* restitution of the negroes, and rendered it the duty of Freeman, to make the restitution. This, I think, was the *legal effect* of the judgment.

Such, I understand to be the effect of the reversal of a judgment under which money has been paid. " If judgment be *reversed*, the party shall be restored to all that he has lost by occasion *of the* judgment; and a writ of *restitution* shall be awarded. When the plaintiff has execution, and the money is levied and paid, and the judgment is afterwards reversed, there, because it appears on the record, that the money is paid, the party, we have seen, shall have restitution without a *scire facias ;* for there is a certainty of what was lost: otherwise where it was levied but not paid; for there must then be a *scire facias*, suggesting the matter of fact, viz: the sum levied, &c." 2 *Tidd's Pr.* 1186.

Here, it seems, that the right to have restitution on the one

part, and the duty to make it on the other, is the direct result of the mere judgment of reversal, *per se.*

Indeed, I believe, that we are all agreed, that the judgment of dismissal did have the effect, to confer on Norwell the right to an immediate restoration of the negroes, and to impose on Freeman the duty of making that restoration.

Freeman failed to restore them, was not that a failure to "produce" them "to answer" the "judgment" "rendered in the case?" I think it was. The judgment of dismissal in legal effect, said to Freeman, restore the negroes. He failed to restore them. This was failing to produce the negroes, to answer the judgment.

I think, then, that the judgment of dismissal, followed by the failure to restore, was a breach of the condition of the bond; and therefore, that the demurrer to the declaration, was well overruled by the Court below.

I admit, that Norwell might have entered up a judgment for restitution against Freeman, or have had a writ of restitution against him without entering up such a judgment; but, I think, that there was no *necessity* for Norwell's doing either, in order to make it his right to have, and Freeman's duty to render restitution; this right and this duty, having already, as I conceive, resulted from the judgment of dismissal. Indeed, if they had not, Norwell could not be entitled to enter up judgment of restitution, or entitled to cause to be issued, the writ of restitution without entering up such a judgment; the title to do either, depending entirely upon such right as he derived from the judgment of dismissal.

Judge McDonald thinks, if I understand him aright, that a judgment of restitution, or, at least, a writ of restitution, was *necessary*, before there could be a breach of the condition.

I have given my reasons for thinking neither *necessary.* I think, that requiring either, in cases of this kind, would also be *inexpedient.* If either were required, it would also be necessary to require, that it should be founded on *notice*

Freeman vs. Norwell,

to the party in possession; otherwise requiring it, would be worthless to him; and in many cases, as in this, (according to the declaration which is admitted by the demurrer,) he would be out of the State, beyond the reach of notice. In such cases therefore, requiring a notice, would be denying redress; and that would, practically, be taking part with one who, armed with his wealth alone, has abused the very law itself, to wrench from the hand of poverty, what is, perhaps, its all.

I think the judgment ought to be affirmed.

Judgment affirmed.

LUMPKIN, J. concurred.

McDONALD, J. dissenting.

Yancy G. Freeman, committee of the person and property of Franklin Freeman, a lunatic, commenced an action of trover against Thomas B. Norwell, in the Superior Court of Wilkes county, returnable to March Term, 1857, of the said Court, for the recovery of three slaves. The said Norwell having failed and refused to enter into bond and security to have the said slaves forth-coming to answer such judgment, execution or decree as might be rendered in the case, according to law; the plaintiff, Yancy G. Freeman, entered into bond with securities, conditioned to be void if he should " well and truly produce said negroes to answer such judgment, execution or decree as may be issued or rendered in the case, and well and truly pay the eventual condemnation money recovered in said case."

Thomas B. Norwell instituted suit on said bond against Henry Freeman, security of said Yancy G. to said bond, returnable to April Term, 1858, of the Superior Court of Lincoln county, setting forth the above facts and setting out the bond substantially, and annexing a copy to his petition. He avers a breach of the condition of the bond in the following

words, to-wit : "and which condition has been violated thus: At March Term, 1858, of the Superior Court of said county," (Wilkes) "said Yancy G. Freeman for whom and with whom said Henry Freeman," (the surety) "became jointly and severally bound, dismissed his said action of trover, and had judgment of dismissal entered on the minutes of said Court, and a judgment for the costs of said suit rendered against him on the 24th day of March, 1858, and on the third day of April, 1858, on demand of your petitioner for said negroes, said Henry Freeman refused to deliver the same to your petitioner, having previously removed the same to the State of South Carolina, the residence of the principal, in order to prevent your petitioner from recovering the same, according to his said undertaking, and thereby broke the condition of said bond, as your petitioner avers."

The defendant appeared and demurred to the plaintiff's declaration. The Court overruled the demurrer and the defendant excepted.

To the judgment of this Court sustaining the decision of the Court below, I dissent.

This is an action at law under Jones' Form of Pleadings, for the recovery of damages for the breach of the condition of a bond. The plaintiff, according to the practice of our Courts, has assigned, in his declaration, the breaches of the condition of the bond on which he relies for a recovery. There was no suit against Yancy G. Freeman, for whom Henry Freeman was surety. There was no judgment, execution or decree, issued in the case against him, except a judgment for the costs, and there is no averment that they were not paid. There was no condemnation money recovered from Yancy G. Freeman in the case on which the bond was given, nor was it possible that any could be recovered from him in that case. The surety alone is sued and he is bound by the letter of his contracts. But if such were not the case, the most free construction of his undertaking in the bond, could not hold him bound for the production of

the negroes to answer a judgment for the costs of a dismissed action.

The Court is of opinion that the voluntary dismissal of the action and the judgment for the costs of the suit entered thereon is, in effect, a judgment for the restitution of the property, which was turned over to the plaintiff. I cannot so regard it. The judgment rendered, was an ordinary judgment for costs, and when the costs are paid the judgment is satisfied and the bond imposes no obligation on the party or his surety to produce the negroes to answer a satisfied judgment. But it is said to be a judgment for the restitution of the property to the defendant, which the plaintiff has wrongfully obtained from him under color of legal process. I cannot think so. I cannot make a judgment for costs, a judgment for restitution. They are essentially distinct. If the judgment for costs be a judgment of restitution, a process should go to the Sheriff to make restitution. What kind of process would the Clerk issue in such case?

This case is likened to the case of a writ of restitution awarded to a party in England, who obtains a reversal of a judgment which has been executed. I cannot see the analogy. This is a proceeding upon a contract, a bond containing stipulations. It is a suit at law in which the parties are bound down by their contract. The defendant has a right to call for the judgment, execution or decree, or the judgment for eventual condemnation money, to answer which his principal was bound to produce the negroes. That must be tried by the record, and confessedly there is none save a judgment for costs; there can be no judgment by inference or implication. The parties certainly did not stipulate to produce the negroes to answer a judgment for costs.

But what is there in the plaintiff's petition or declaration, which shows that the plaintiff is entitled to the restitution of the negroes, or that they were ever in his possession?

It does not appear that an affidavit was made by the plaintiff requiring the defendant to enter into a recognizance with surety for the forth-coming of the negroes to answer any judgment, execution or decree, and that a process or order was given to the Sheriff requiring him to take it, or that it was in consequence of the defendant's failure to enter into such recognizance, that the negroes were taken from his possession and placed in the possession of the plaintiff. If we are to arrive at the conclusion that such was the fact, we must do it by argument and inference, for we are not informed of it by averments in the declaration.

It was asked in argument if the party is to be left without a remedy? It is sufficient for me to say that in my judgment; he is not entitled to the remedy sought in the record, according to the facts which the record presents. But I will say it may be possible, that if the defendant had applied to the Court below, upon the dismissal of the plaintiff's action on his own motion, it would have ordered the plaintiff to restore to the defendant the slaves sued for, if they were indeed obtained from him in the manner alleged in the argument, but which does not appear in the record. The Court might have held, on such an application, that the plaintiff could not be allowed to use its process to obtain surreptitiously, the possession of property, without a trial of the title, which it was the main object of the statute, under which the proceeding was had, to prevent. If the Court had so ordered, that order might have been held a sufficient judgment under the terms of the bond for the foundation of a suit, if the negroes had not been produced to answer it. I state these things supposititiously, because the case does not call for a decision upon the matters suggested. But a mere order or judgment to restore the property, would not afford the party a full or complete remedy for the injury done him, for he would be entitled to the hire. Hence perhaps, the ancient writ of restitution, awarded by the Court on the reversal of a judgment, might furnish a guide for a proceeding

which would enable the party to obtain his rights. By that writ the party was not in all cases restored to his property, for it may have been sold to a third person under a writ of *fieri facias*, but in that case he would be entitled to the money for which it was sold; and if the property had been delivered to the plaintiff upon an *elegit*, the defendant would be entitled to a restitution of the property and the profits made during the possession of it by the plaintiff. The writ of restitution directs an enquiry into the profits made by the plaintiff from the property. *Cro. Jac.* 246, 698.

But I apprehend that, if the plaintiff had in such case in England, entered into a bond to account for profits, ascertained upon enquiry under a writ of restitution, an English Court would not hold that there was a breach of the bond, if no writ of restitution had been awarded.

Is it not probable that the Legislature may have intended, that in case where bail might be required, the defendant, who, from his inability to give security, should be compelled to deliver the property to the plaintiff, who should give a like bond unto that required of him, should become the plaintiff in the action for the trial of the title? Under such construction, no difficulty could arise as to the remedy upon the bond.

1 regret to differ with my brethren in their views of the party's liability, but as I am clearly of the opinion that the plaintiff's declaration shows no breach of the condition of the defendant's bond, and that is made the foundation of the action, I think the judgment of the Court below ought to be reversed.