Marshall vs. Livingston.

## MARSHALL vs. LIVINGSTON.

| 77 | 21 |
| 86 | 30 |
| 88 | 367 |
| 88 | 534 |
| 77 | 21 |
| 100 | 582 |

| 77 | 21 |
| f110 | 512 |

| 77 | 21 |
| 130 | 593 |

1. Where an action of trover was brought and bail process was sued out, and upon the failure of the defendant to give the bond required, the plaintiff gave bond and security, and the property was delivered to him, if he voluntarily dismissed his action of trover, this amounted in law to a judgment of restitution, and *ipso facto* upon such dismissal, entitled the defendant to a writ of restitution, or, where it was impossible to restore the subject of the action in kind, to a writ of *fieri facias* for the value thereof. Where the plaintiff gives bond and takes the property, this carries with it all the liabilities and remedies to which the defendant would have been subjected in case he was cast in the suit, or set up no defence or abandoned it when made.

2. Where the plaintiff fails in his suit, or voluntarily dismisses it, the other party is not driven to his action on the bond, but may have a writ of restitution for the property and its hire or a *fieri facias*, if he so elects, for its value. If he elects to take the money, the sworn value placed upon the property would seem to afford the correct measure of damages, especially if all of the property were seized and turned over by the sheriff. Where part of the property was so deliverd, the same measure would apply to that extent.

3. The plaintiff and his surety being bound for the " eventual condemnation money," the other party had the option to go either upon the property replevied, or upon any other property of the recognizors ; and having chosen the latter, the plaintiff could not change this choice and relieve himself of the form of liability thereby imposed, either by a return or an offer to return the property.

(*a.*) As the articles sued for in this case were perishable in their nature, and such as were liable to be consumed in their use, it is apparent that this offer to return could not have been complied with.

4. Where the papers in the case had been before the court during the progress of the trial, and the judge had them accurately in his mind when he rendered his final decision, the fact that the plaintiff's counsel absented himself, without leave, and had the papers in his possession when the case was finally passed upon by the court, will not avail to disturb the decision.

(*a.*) There was no merit in the complaint that the court allowed the sheriff to prove, in the absence of plaintiff and his counsel, that the recognizance was executed before the plaintiff dismissed his suit. The plaintiff could not have made an issue upon such statements, after having received possession of the property on the faith of such recognizance.

5. When the court signed and certified a bill of exceptions, he exhausted all the power he had over the questions made in the case,

Marshall *vs.* Livingston.

and if he went further and signed two other bills of exceptions in the same case, they will be dismissed.

(*a.*) The court could not set aside the judgment to which the plaintiff had submitted by his voluntary action without some grave cause, such as fraud, mistake or conduct of the opposite party by which the plaintiff was misled, and not then, unless he showed satisfactorily that the action was taken without any mixture of fraud or negligence on his own part.

(*b.*) The plaintiff had a right to dismiss his suit, either in term time or in vacation, and the omission to place this on the minutes of the court by misprision or oversight of the clerk might be supplied at any subsequent term by a *nunc pro tunc* order.

April 27, 1886.

Trover. Bonds. Principal and Surety. Practice in Superior Court. Judgments. Practice in Supreme Court. Estoppel. Before Judge FORT. Macon Superior Court, November Term, 1885.

On December 14, 1883, T. J. Marshall brought suit against H. H. Livingston to recover certain corn, fodder, cotton and cotton seed, and on the same day made affidavit to obtain bail process. In this he stated that the value of the property was $405.50. The sheriff seized the property, except a part of the corn, and the defendant failing to give bond, delivered it to the plaintiff, who gave a bond dated May 13, 1884. The defendant filed a plea of the general issue. At the May term, 1884, counsel for the plaintiff moved the court to dismiss the case, which motion was granted, and an entry to that effect was made on the bench docket, but no order was entered on the minutes. At the November term, 1884, the defendant moved to have the case re-instated, but on objection of the plaintiff's counsel, the court over-ruled the motion. At the same term, the defendant moved to enter judgment on the bond given by the plaintiff.

On May 12, 1885, the defendant filed a petition reciting the above facts and praying a rule *nisi* against the plaintiff to show cause why the order of dismissal should not be entered *nunc pro tunc*. On the same day, the plain-

tiff's attorney moved, in writing, that the case be re instated. On May 14, the plaintiff's attorney, in writing, offered to turn over the property to the defendant, if the latter would give the bond required by law, and moved that the trover case proceed to trial. He stated also in this motion that the property was delivered to him sometime before the bond was given.

The court granted an order allowing the dismissal to be entered *nunc pro tunc;* also an order refusing to allow the case to be re-instated. He also entered judgment against the plaintiff and his security for the value of the property, as stated in the bail affidavit.

The plaintiff filed three bills of exceptions, excepting to the three rulings above stated respectively. Each of these was certified December 30, 1885. The bill of exceptions to the entry of judgment on the bond assigns error because the court entered judgment without a jury, and also because the court heard testimony and entered judgment in the absence of the plaintiff's counsel and of all the papers. The presiding judge states in a note that the case was fully heard during the first week of court, counsel for both sides and all of the papers being present, and that the decision was reserved; that counsel for the plaintiff left without any leave of absence, expecting to return on Wednesday of the second week of court, and carrying the record with him; that the court waited until Wednesday afternoon, and hearing nothing of the absent counsel, pro-ceeded to render his decision; that counsel for the defendant stated that counsel for the plaintiff had suggested that the bond was given after the dismissal of the case; that the sheriff was sworn and stated that the bond was taken before the dismissal; and that the court thereupon rendered judgment.

W. S. Wallace & Son, for plaintiff in error.

B. B. Hinton; A. A. Carson; W. A. Hawkins, for defendant.

HALL, Justice.

1. These three bills of exceptions, taken by the same party in one cause and on the same record, make but a single material question, and that is, whether the voluntary dismission by the plaintiff of his action of trover, in which bail was required, and the delivery of the property in question to him on the bond required by the statute, where the defendant failed to replevy it, amounts in law to a judgment of restitution, and *ipso facto* upon such dismissal, entitled the defendant to a writ of restitution, or, where it was impossible to restore the subject of the action in kind, a writ of *fieri facias* for the value thereof. At common law, from a very early period this appears to have been the course pursued by the courts.

In Goodyere *vs.* Ince, Cro. Jac., 246, the law was thus laid down by the entire court; the question being, where a judgment was reversed, whether the defendant therein should be restored to the lease itself which had been disposed of on an extent, or to the value for which the sheriff delivered it in execution, viz., one hundred pounds, "for it was alleged that the sale was good, and that afterward it had come into two or three hands." But it was held that the sale should not bind him, "for there is a difference between this sale and delivery upon an *elegit* to the party himself, and a sale to a stranger upon a *fieri facias*, for the *fieri facias* gives authority to the sheriff to sell and to bring the money into court; wherefore, when he sells a term to a stranger, although the execution be reversed, yet he shall not by virtue thereof be restored to the term, but to the monies, because he comes duly thereto by act in law. But the sale and delivery of the lease to the party himself upon an *elegit*, is no sale by force of the writ delivered in extent, which, being reversed, the party shall be restored to the ermt itself." This distinction is recognized by numerous earlier and later authorities. Bacon's Ab. Tit. Execution (Q), and cases there cited.

In Duncan *vs.* Kirkpatrick and another, 13 S. & R., 294, this subject was fully discussed, and the conclusion reached by the court was clearly stated by Gibson, C. J., as above announced; indeed, he goes so far as to hold that an action of *assumpsit* cannot be maintained upon an express or implied promise to pay the amount of a judgment rendered against the party, "because the plaintiff would thus be permitted to turn the judgment into a simple contract debt."

It is true that we have allowed an action upon the bond under the circumstances presented here, for we hold that this amounts to a breach of its condition; but such action is merely cumulative, and does not deprive the party of the remedy given by the statute, or that which previously existed at common law. In *Norwell vs. Freeman*, 25 *Ga.*, 359, this dismissal of his action by the plaintiff after he had replevied the property was held to be a judgment of restitution, and Benning, J., who delivered the opinion of the majority of the court, distinctly laid down the principle that the party dismissing the suit rendered himself liable to have either a judgment of restitution entered against him, or a writ of restitution issued without entering the judgment; and in the case of *Glover et al. vs. Gore*, determined at February term, 1885 (74 *Ga.*, 680), we followed this decision. We there show that, had the defendant in the original suit replevied the property, and had a verdict been returned against him, both he and his surety would have been liable to a judgment on their bond. He could have had either one of these findings in his favor, viz., that the property be restored with compensation for its use, or that he recover the property, and upon the defendant's failure to deliver it, that he recover a certain sum of money; or he might have had a money verdict only (Code, §§3028, 3563, 3564). But if the defendant fails to replevy the property when taken and seized by the sheriff, that officer is required to deliver it to the plaintiff, or his attorney or agent, upon his "entering into like recognizance with security." Code, §3420. This carries with

it all the liabilities and remedies to which the defendant would have been subjected, in case he was cast in the suit, or set up no defence, or abandoned it when made. In that event judgment was to be signed up against him and his security and execution issued thereon without further proceedings. Code, §3419. This remedy, though not expressly given, where the plaintiff replevies, is necessarily implied from the very terms of the law conferring this right. In this respect there is perfect reciprocity of rights. ·

2. Where the plaintiff fails in his suit, or voluntarily dismisses it, the other party is not driven to his action upon the bond, but may have his writ of restitution, for the property and its hire, or a *fieri facias*, if he so elect, for its value. In this respect, he is entitled, like his opponent, to make an election; and where he elects to take the money, it would seem that the sworn value placed upon the property would afford the correct measure of damages, especially where all of it was seized and turned over by the sheriff; in this instance, however, the greater part but not all the property seems to have been taken into custody and delivered by the sheriff to the plaintiff, and what was thus taken was valued according to the standard laid down in the affidavit for bail. The amount for which this proceeding was awarded must be reduced so as to conform to that specified in the bond, with interest thereon from the time it went into plaintiff's possession; and when thus reduced, the execution is to proceed.

3. The plaintiff and his surety by their recognizance became bound for the " eventual condemnation money." The other party had the option to go either upon the property replevied or upon any other property of the recognizors; he has chosen the latter, and the plaintiff could not change that choice and relieve himself of the form of liability thereby imposed, either by a return or an offer to return the property. As the articles sued for in this case were perishable in their nature, and such as were liable to be consumed in their use, it is apparent that this offer to return could not have been complied with.

Marshall *vs.* Livingston.

4. The absence of the papers in the possession of the plaintiff's counsel at the time this case was finally passed upon by the court cannot avail to disturb this decision, the counsel was absent himself without leave, the papers had been before the court during the progress of the trial, and the judge had them accurately in his mind when he rendered his final decision. The party ought not to be prejudiced or delayed by the fault of his adversary's counsel. So of the complaint that the court allowed the sheriff to prove, in the absence of plaintiff and his counsel, that the recognizance was executed before the plaintiff dismissed his suit. Whether the recognizance was completed before or after the suit was dismissed was perfectly mmaterial, and such an issue, if offered, should not have been tolerated by the court for a single instant. It was the duty of the plaintiff when he took possession of the property to have executed and delivered his recognizance. His failure to do so was his own fault, and he cannot be permitted to take advantage of such wrong, when, by so doing. injury would be done, not only to the defendant, but to the sheriff, who had trusted to his honor to perform his engagement. This disposes of the questions made in case 1, and results in an affirmance of the judgment therein excepted to, with the modification indicated in this opinion.

5. When the court had signed and certified that bill of exceptions, he had exhausted all the power he had over the questions made in the case. There is no law or authority that we are apprised of that could have authorized the signing of the other two. Even had they been bills of exceptions taken *pendente lite*, as they were not, they would have come to this court on a single writ of error, and as a part of the record brought here by virtue of that writ of error. The court having no jurisdiction to issue these writs, the cases must be dismissed, and it is so ordered. We feel the less reluctance in giving them this direction, as we are satisfied the questions they make are without merit. The court could not set aside the judgment to

which the plaintiff had submitted by his voluntary action without some grave cause, which was not pretended, such as fraud, mistake or conduct of the opposite party by which the plaintiff was misled, and not then unless he showed satisfactorily that the action was taken without any mixture of fraud or negligence on his own part.

The plaintiff had a right to dismiss his suit either in term time or in vacation, and the omission to place this on the minutes of the court by the misprision or oversight of the clerk, might be supplied at any subsequent term by a *nunc pro tunc* order. So that in these two cases, we order the judgments complained of affirmed by the dismissal of the same.

Judgment affirmed.