Livingston *vs.* Marshall.

LIVINGSTON *vs.* MARSHALL.

BLECKLEY, C. J.—1. A sworn bill may be amended in its prayer, and by adding a new and proper party complainant, without swearing to the amendment.

2. Immaterial error in allowing trivial amendments without requiring them to be sworn to, will not work a reversal.

3. That a bill has not been served is not a ground of demurrer to the same.

4. Where the plaintiff in a judgment against two defendants, one as principal, the other as surety, is a non-resident of the State and without property here, a debt due from him to the principal may be set off in equity against the judgment, and a bill for that purpose will be entertained in the county in which the judgment was rendered.

5. There is no element of *res adjudicata* as to any debt between the parties to an action of bail trover, where the plaintiff in the action, after obtaining possession of the property and giving bond, dismissed the same, and thereupon a judgment was entered up against him and his surety in favor of the defendant, as in *Marshall vs. Livingston*, 77 *Ga.* 21. Such judgment has no relation to any debt which at the time of its rendition was due and owing from one party to the other.

Judgment affirmed.

March 1, 1889.

Equity. Amendment. Practice. Debtor and creditor. Judgments. Set-off. *Res adjudicata.* Trover. Before Judge FORT. Macon superior court. May term, 1888.

On February 12, 1882, Marshall and Livingston entered into a contract containing the following provisions, in substance : Marshall agreed to furnish certain land and supplies for running a farm that year, and to sell to Livingston certain horses for $690 to be paid on September 1st of that year. Livingston agreed to cultivate the land, gather the crop, pay Marshall certain portions of it for rent, etc. and the $690 for the horses at the time specified ; also that all right and title to said stock

should remain in Marshall until paid for, and Marshall should have full and legal control of it after the 1st of September if not paid for by that time, and Livingston was to make good any loss from depreciation in value thereof. It further agreed that all the crops raised should be bound to Marshall for all of the indebtedness of Livingston to him, and that he should have full and legal control of them, after August 1st, until all of Livingston's indebtedness for stock, supplies, etc. was fully paid and satisfied. This contract was not recorded.

During the same year, Livingston made to other parties two mortgages on the stock, and perhaps the crops. On March 29, 1883, Livingston, being indebted to Marshall $403.19, balance on account of the previous year's supplies, and being also indebted to J. L. Ogburn, who wished to secure his indebtedness, the three made an agreement, reciting that Livingston had agreed to rent of Marshall, for the year 1883, certain land and to pay therefor certain cotton, etc., and that he was unable to carry the same out; and therefore Ogburn agreed to take charge of the farm and stock (Livingston having turned them over to him) and to become responsible to Marshall for the rents and mules, and also for all of the indebtedness of Livingston to Marshall at that date for supplies or otherwise; it being understood that the crops raised on the land were to be bound to Marshall for the rents and for all the indebtedness of Livingston to him, and that Ogburn should in no way be bound to Marshall for said rents and indebtedness any further than the crops should pay. It was further agreed that the crops raised should be bound to Marshall for whatever sum he might pay out on account of the mortgages Livingston had made, and for all supplies furnished or to be furnished. On April 3, 1883, Marshall paid $239 to the mortgagees, and took a receipt releasing the prop-

erty from the lien thereof, and also releasing Livingston from liability save to pay the balance due thereon.

On December 28, 1883, Marshall brought an action of trover against Livingston for certain corn, cotton, cotton-seed and syrup, alleged to be of the value of $405. The sheriff seized a portion of this property, and as Livingston could not be found, turned it over to Marshall without bond. In May, 1884, that officer told Marshall that counsel for Livingston demanded a bond, and Marshall gave one, with W. E. Ogburn as security. At the May term, 1884, of the court, Marshall's counsel, without instruction, dismissed the trover suit. A year afterwards, counsel for Livingston filed a petition to be allowed to enter judgment on the bond; and at the November term, 1885, judgment was so entered for $405 principal. A writ of error to this judgment was taken to the Supreme Court, where a judgment of affirmance, with instructions, was rendered. 77 *Ga.* 21.

On May 11, 1886, Marshall filed his bill against Livingston, from which the above facts appear. It is also alleged therein that Livingston is a non-resident of the State, having run away early in 1884, but his last residence in the State being in Macon county, where the bill is filed; that complainant made the payment on the mortgages to relieve his stock and to save a prosecution against Livingston, and did so at Livingston's special instance and request; that the property for which the trover suit was brought was part of the crop grown in 1883; that at the time of turning over the farm to J. L. Ogburn, Livingston owed complainant $77.10 for advances of 1883, making his total indebtedness, including the amount paid on the mortgages, $719.29; that Ogburn is now dead and his estate is insolvent; that Livingston also is insolvent and has

no property in Georgia; that while complainant accepted the contract Ogburn made, and while Livingston agreed to it, there was no agreement that Livingston should not be bound for the rents and advances for 1883, but all the crop raised that year was, by the agreement, bound for all of his indebtedness, past and future, and while Ogburn agreed to pay certain amounts to complainant, he did not do so; that a portion of Livingston's indebtedness for 1882 ($376.04) is evidenced by unpaid notes that complainant holds, and he holds receipts for the further advances; and that unless these amounts are set off against the judgment on the bond, they will be a total loss to complainant. It is further alleged that the judgment on the bond was taken without fault of complainant and by mistake of his counsel; and that he had been authorized by Ogburn to take charge of the crop for which the trover suit was brought and apply it to the extinguishment of Livingston's indebtedness. The prayer is, to enjoin the judgment until the equities of the parties can be adjusted under this bill, and for decree against Livingston for the amount he owes complainant, which, when ascertained, may be set off against the judgment; also for general relief and *subpœna*. On the bill is the sheriff's entry, dated June 1, 1886, that the defendant is not to be found in Macon county.

On May 10, 1887, the defendant, by his counsel, filed a demurrer to the bill on the following grounds: (1) There is no proper service of the bill. (2) The bill shows on its face that the court has no jurisdiction. (3) The plaintiff is not a proper party to the bill, as shown on its face. (4) The relief asked for in the bill is *res adjudicata*. (5) There is no equity in the bill. (6) The plaintiff has a complete and adequate remedy at common law. Following the demurrer in

the record is an order for service of the bill on de-
fendant by publication, accompanied by an oath of
W. S. Wallace, dated May 16, 1887, that he had
made diligent inquiry, and that, from all the informa-
tion he could gather, the defendant was not a resi-
dent of the State.

Pending argument on the demurrer, the complain-
ant offered to amend the bill by alleging that defendant
was a resident of Macon county at the time the action
of trover was commenced, but ran away from the State
before he could be served; and that the question of the
indebtedness of defendant to complainant has never
been adjudicated; also by praying that the judgment
against complainant and Ogburn be perpetually en-
joined from proceeding against them, if it should be
found that defendant is indebted to complainant a
greater sum than the amount found against complain-
ant and Ogburn; and also by making W. F. E. Og-
burn a party plaintiff to the bill. Defendant's coun-
sel objected to the amendment as being insufficient in
law and not sworn to, and because there was no good
and subsisting cause of action pending in court by
which to amend. The objections were overruled, and
the amendment allowed. Then the demurrer was re-
newed to the bill and amendment, and was overruled.
Whereupon the defendant excepted, and assigned error
on the allowance of the amendment and the overruling
of the demurrer.

A. A. CARSON and E. F. HINTON, for plaintiff in
error.

W. S. WALLACE & SON, contra.