## 38405. LEVENTHAL v. CITIZENS & SOUTHERN NATIONAL BANK.

PER CURIAM.

On September 21, 1976, Dobbs Industries, Inc., executed a note to C & S National Bank in the amount of $12,645.83. The note, which represented a renewal of an outstanding debt, was guaranteed by Ronald S. Leventhal and Oliver Reid Dobbs III, and was secured by three deeds to secure debt which Dobbs Industries had conveyed to C & S on August 1, 1975.

When Dobbs Industries failed to pay the note, C & S sued Dobbs Industries on the note and sued Dobbs and Leventhal on their guaranty in the State Court of Fulton County. Leventhal and C & S negotiated a "consent judgment agreement" in October 1978, whereby Leventhal agreed that if Dobbs Industries failed to pay the note by December 31, 1979, he would pay it; in return C & S would assign the three deeds to secure debt to him.[1]

The relevant portions of the consent judgment agreement which was filed in the State Court of Fulton County, follow:

"(1.) Simultaneously with the execution hereof, Leventhal shall pay, or caused to be paid, to the Bank the accrued and unpaid interest due on that certain promissory note executed by Dobbs Industries, Inc. on September 21, 1976, in the original principal amount of $12,645.83. (2.) In the event Dobbs Industries, Inc. does not pay the outstanding principal balance pursuant to the note described in Paragraph 1 above of $12,645.83, together with interest at the rate of 8% per annum from and after the date of execution hereof on December 31, 1979, Leventhal shall make such payment. . . . (3.) Upon payment of the total amount of principal and interest due pursuant to the preceding paragraph, the Bank shall transfer and assign all of its right, title and interest in and to said promissory note and the three deeds to secure debt presently held by the Bank, dated August 1, 1975, conveying Lots 3, 7 and 8 of Block F, Macland West Subdivision, Land Lot 383, 19th District, Second Section, Cobb County, Georgia, to the party making such payment. . . .[2] (7.) Upon

---

[1] The "consent judgment agreement" was not a consent judgment but was an agreement or contract allowing C & S to take a judgment on certain conditions.

[2] Leventhal argues that the clause "conveying Lots 3, 7 and 8 . . . ," is a warranty of title in that it promises a conveyance of title. However we read that clause as modifying the language which precedes it, i.e., as descriptive of the three deeds to secure debt. Leventhal's construction would change the plain language of paragraph 3 to read: "[t]he Bank shall transfer and assign all of its right, title and interest in and to said promissory note and the three deeds to secure debt presently held by the

default in payment in accordance with the above stated terms, the Bank shall be entitled to an immediate judgment for the outstanding principal balance pursuant to the Dobbs Industries, Inc., note ($12,645.83) . . . together with accrued interest thereon at the rate of 8% per annum and attorneys' fees as provided for in said promissory notes. Leventhal agrees that he shall have no defense to the entry of such judgment, and such judgment shall also be a final judgment in favor of the Bank. . . . Upon such default, the Bank by and through its attorney of record shall make affidavit to the fact of the default and the amount outstanding, and upon presentation of such affidavit to the presiding judge, shall be entitled to the immediate entry of the judgment as described herein."

Dobbs Industries failed to pay the note on or before December 31, 1979, or thereafter. Leventhal then discovered, via a title search, that Dobbs Industries had conveyed the lots at issue to Oliver Reid Dobbs III, in 1974; therefore the 1975 deeds to secure debt to C & S had conveyed nothing (except possibly a lawsuit) and C & S had no recorded interest in the property. When Leventhal declined to pay the note, the attorney of record for C & S made an affidavit to the fact that Leventhal was in default under the terms of the consent judgment agreement and on January 30, 1980, judgment was entered in favor of C & S and against Leventhal for the amount of the note plus interest and attorney fees.

On March 28, 1980, Leventhal filed a complaint in equity in the Superior Court of Fulton County seeking to set aside the judgment and consent judgment agreement on the grounds, inter alia, that they were procured by fraud or were the product of mutual mistake. The trial court granted C & S Bank's motion for summary judgment and Leventhal appeals.

1. At the outset it is important to note that we are not dealing here with a suit to set aside only a contract; we deal here with a complaint in equity to set aside a judgment.

A complaint in equity may be brought to set aside a judgment for fraud, accident or mistake, or the acts of the adverse party unmixed with the negligence or fault of the complainant. Code § 81A-160 (e) (see former Code §§ 37-219, 110-710). The phrase "unmixed with the negligence or fault of the complainant" modifies the words "fraud, accident or mistake" as well as the words "acts of the adverse party." *Marshall v. Livingston,* 77 Ga. 21, 28 (1886).

---

Bank dated August 1, 1975, and shall convey Lots 3, 7 and 8 of Block F, Macland West Subdivision, Land Lot 383, 19th District, Second Section, Cobb County, Georgia, to the party making such payment." This we decline to do.

It has long been the rule that for the judgment of a court of competent jurisdiction to be set aside in equity for fraud, the fraud in the procurement of the judgment must have been actual and positive, done with knowledge, and not merely constructive fraud, committed in ignorance of the facts. *Abercrombie v. Hair,* 185 Ga. 728, 732 (196 SE 447) (1938) (and cases cited); *Rivers v. Alsup,* 188 Ga. 75 (2) (2 SE2d 632) (1939).[3] This rule is applicable to Code § 81A-160 (e). *Kitchens v. Clay,* 224 Ga. 325, 327 (161 SE2d 828) (1968).

Thus, one of the required elements of fraud when asserted to set aside a judgment is actual fraud, done with knowledge. C & S avers that it was not aware that it did not have a valid security interest in the property at issue.[4] Leventhal argues that knowledge by C & S that it did not have a valid security interest may be inferred from two facts. First, C & S concedes that in January of 1980, Leventhal asked the bank to foreclose on the property and the Bank declined to do so. Second, C & S concedes that Leventhal's attorney wanted the consent judgment agreement to provide that C & S would assign its "first priority deeds to secure debt" to Leventhal, but C & S omitted the words "first priority." We do not agree that either of these circumstances create a genuine issue of material fact so as to require a trial to determine whether C & S was aware the security deeds were of no effect. C & S had a right to proceed under the consent judgment agreement as opposed to foreclosure and its election of one remedy over the other is not evidence of knowledge the security deeds were of no effect.[5] Likewise we find no evidence of fraud in the bank's having negotiated an agreement in which they gave no warranty of title. See *Windjammer Associates v. Hodge,* 246 Ga. 85 (269 SE2d 1) (1980). In this connection, it should be recalled that, as Leventhal knew, C & S took the deeds as security for a renewal note, not as security for a loan on the property. The rule that fraud may be shown by slight circumstances, Code § 37-706, is not applicable to suits to set aside judgments. The trial court did not err in granting summary judgment to C & S on the fraud count.

---

[3] We are not dealing here with a case involving children or family relationships, creditors not parties to the case, or confidential relationships.

[4] C&S also avers that it did not make any representation to Leventhal that it had a valid security interest in the property, see *City Dodge, Inc. v. Gardner,* 232 Ga. 766 n. 1 (208 SE2d 794) (1974), but that such representations were made to Leventhal by Dobbs and the attorney representing Dobbs and Leventhal.

[5] Leventhal's contention that the bank should have foreclosed on the property rather than sue him on his guarantee is subject to the same defect. The bank had the option to foreclose on the property or sue him on his guarantee and its election to sue him is not evidence it knew the security deeds were of no effect.

2. Where a defendant defends a fraud claim on the basis of lack of knowledge, the complainant naturally claims mutual mistake as an alternative. Assuming for purposes of argument that C & S did not know it had no security interest in the property, Leventhal contends that he is entitled to set aside the judgment on the ground of mutual mistake of the parties.

In order to set aside a judgment based upon mistake, the complainant must show that the entry of judgment was "unmixed with the negligence or fault of the complainant." Code Ann. § 81A-160 (e); *Marshall v. Livingston,* supra. Here complainant failed to have the title searched. Thus, the trial court did not err in granting summary judgment to C & S on the mistake count.[6]

3. Leventhal contends that the consent judgment agreement is void because of impossibility of performance; i.e., because C & S, having no security interest in the property, can convey no security interest in the property. See Code § 20-111. Impossibility of performance is a defense relating to contracts, not to judgments. Where A sues B on a contract, B may defend on the basis of impossibility of A's performance, but where A sues B and obtains a judgment, B may not later set aside that judgment on the basis of an impossibility of performance B overlooked in defending the suit. See Code § 37-220. Similarly, where A sues B on a contract and they enter into a consent judgment, B cannot later set that judgment aside on the basis of an impossibility of performance overlooked by B. Leventhal's impossibility of performance argument is without merit.

4. Leventhal's argument that paragraph (2) of the consent judgment agreement does not specify when his payment is due, overlooks paragraph (7) of the agreement. In addition, absent supersedeas, judgments are effective and therefore payable upon entry, even though execution thereon may be delayed 10 days. Code Ann. § 81A-162 (a).

5. Leventhal's remaining enumerations of error have been disposed of, or are without merit in view of the foregoing.

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 6, 1982 —
REHEARING DENIED MAY 18, 1982.

---

[6] This "negligence or fault of the complainant" would defeat complainant's fraud claim as well.

*Trotter, Bondurant, Miller & Hishon, M. Jerome Elmore,* for appellant.

*Alston, Miller & Gaines, Jack H. Senterfitt, Conley Ingram,* for appellee.

HILL, Presiding Justice, concurring.

I concur in the majority opinion and judgment. I write to make two additional points.

First, in the criminal law we have seen a lack of finality which clogs the courts and discourages our law abiding citizens. This same lack of finality is increasing in civil cases in the form of complaints and motions to set aside judgments brought under Code Ann. § 81A-160 (d), (e). The filing of such complaints and motions naturally increases when the economy slows down. Although the interest rate on judgments was raised to 12% in 1980 (Ga. L. 1980, p. 1118; Code Ann. § 57-108), I believe the General Assembly should raise the interest rate on judgments so as to at least equal if not exceed the current market interest rate. Appellants, and complainants under Code Ann. § 81A-160, should not use the appellate courts as a place where they can save interest payments even though they lose on appeal.

Second, the complainant here refers several times in his brief to his right to have alleged genuine issues of material fact tried by a jury. This was a complaint in equity. We have recently held that there is no statutory right to trial by jury in equity cases, *Cawthon v. Douglas County,* 248 Ga. 760, 763 (286 SE2d 30) (1982) (but see Code § 37-1103 regarding findings of fact by auditors). Thus, even if this case had been reversed on appeal, the validity of the judgment would have been decided by the court, not a jury, except in the unlikely event the court saw fit to submit it to a jury. *Guhl v. Davis,* 242 Ga. 356, 358 (249 SE2d 43) (1978); Code Ann. §§ 81A-139, 81A-149. In suits for injunction and in complaints to set aside judgments, counsel should consider not making motions for summary judgment, where the finding of a genuine issue of material fact following a time consuming appeal necessitates a trial. Because such suits are tried nonjury, time and expense can be saved by letting the trial court conduct the trial, decide a motion for "directed verdict" (motion for judgment), decide issues of fact (if any), and decide a motion jnov (if necessary). On appeal from a trial granting or denying an injunction, or granting or denying a complaint to set aside a judgment, the issue is whether there is any evidence to support the trial judge's decision. On the other hand, on appeal from the grant or denial of a motion for summary judgment, the issue is whether there is any genuine issue of fact. These differences in the issues on appeal make a significant

difference in the way an appeal is decided.

Similarly, to save time and expense in nonjury cases, trial judges hearing motions for summary judgment might consider suggesting to the attorneys that they submit the case for final decision, compare Code Ann. § 81A-165 (a)(2), rather than for decision on the motion for summary judgment. See Code Ann. § 81A-140 (b). This will expedite 'final resolution of the case.

I am authorized to state that Justice Weltner joins in this concurring opinion.

ON MOTION FOR REHEARING.

Leventhal's motion for rehearing is denied. C & S Bank's motion for 10% damages pursuant to Code Ann. § 6-1801, based on the ground that this appeal was taken for delay only, is denied.

*All the Justices concur.*