**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**

**https://www.gaappeals.us/rules**

**October 4, 2024**

# In the Court of Appeals of Georgia

A24A0611. HAWBAKER v. BRITTINGHAM.

HODGES, Judge.

We granted Donald F. Hawbaker's discretionary appeal, filed pro se,[1] after the trial court held him in contempt for refusing to dismiss his ex-wife from a civil lawsuit. Hawbaker raises three enumerations: He argues that the trial court erred in granting the motion for contempt because it did so by wrongfully modifying the terms of the divorce decree and settlement agreement and because its decision was unsupported by record evidence; alternatively, he argues that the trial court erred in denying his motion to dismiss his ex-wife's contempt petition; and, finally, he argues that the court set the wrong date for the stay of enforcement on the contempt order when it

---

[1] Hawbaker is a disbarred attorney. See *In the Matter of Hawbaker*, 314 Ga. 77, 78 (872 SE2d 690) (2022).

granted his writ of supersedeas. For the reasons that follow, we reverse.

Hawbaker and his then-wife, Gayle Brittingham, were divorced in 2022, and the judgment of divorce attached and incorporated by reference a settlement agreement between the parties. Pertinent to this appeal, under the settlement agreement, Brittingham agreed that by June 30, 2022, she would "pay, discharge and otherwise refinance into her sole name" all mortgage indebtedness on the marital residence, on which Hawbaker at that time was the sole obligor. She also agreed to cease using the last name "Hawbaker" within 10 days of the trial court's entry of a divorce decree granting her a change of surname. Based upon the date the divorce was granted, July 25, 2022, Brittingham was to cease using Hawbaker's last name by August 4, 2022.

The settlement agreement provided that "upon [Brittingham's] performance of all obligations undertaken by or imposed upon her by this [s]ettlement [a]greement, including but not limited to the payment, discharge and satisfaction of [Hawbaker's] indebtedness" to the mortgage company, Hawbaker was to dismiss Brittingham, with prejudice, from a civil lawsuit he had filed in Pike County (the "Pike County lawsuit").

The divorce judgment specifically ordered both parties to "*timely* perform each

and every term and provision" of the attached settlement agreement and stated that "[u]pon a party's failure to *timely* do so," the trial court would entertain and grant a contempt motion by the opposite party. (Emphasis supplied.)

On November 22, 2022, Brittingham filed a petition for contempt against Hawbaker, contending that he had wilfully failed to comply with the decree and settlement agreement because he had not dismissed her from the Pike County lawsuit even though she had "satisfied her obligations to him" under the agreement. Hawbaker filed a motion to dismiss the contempt petition for failure to state a claim. He argued, inter alia, that Brittingham had failed to fully and timely perform her obligations under the agreement, which were conditions precedent to his duty to dismiss her from the Pike County lawsuit, and as a result, he should not be held in contempt.

Following a hearing at which Brittingham was represented by counsel and Hawbaker appeared pro se via video, the trial court entered its order denying Hawbaker's motion to dismiss, holding Hawbaker in contempt, and providing he could purge himself of contempt by dismissing Brittingham from the Pike County lawsuit by a date certain. Hawbaker appealed.

1. Hawbaker argues that the trial court erred in granting the contempt motion

by impermissibly modifying the settlement agreement and decree to require him to dismiss Brittingham from the Pike County lawsuit even though Brittingham had missed the deadlines in the judgment of divorce and settlement agreement and, thus, had not satisfied the conditions precedent to his performance. We agree.

"In civil contempt appeals, if there is any evidence from which the trial court could have concluded that its order had been violated, we are without power to disturb the judgment absent an abuse of discretion." (Citation and punctuation omitted.) *Korowotny v. Outback Property Owners Assn.*, 291 Ga. App. 236 (661 SE2d 857) (2008); see *Bernard v. Bernard*, 347 Ga. App. 429, 432 (2) (819 SE2d 688) (2018) ("[C]ivil contempt imposes conditional punishment as a means of coercing future compliance with a prior court order.") (citation and punctuation omitted).

> In matters such as this, while the trial court has broad discretion to determine whether a divorce decree has been violated and has authority to interpret and clarify the decree, *it does not have the power in a contempt proceeding to modify the terms of the decree. A trial court has broad discretion to enforce the letter and the spirit of the decree, but the court must do so without modifying the original judgment that is being enforced.* It is the function of the court to construe the contract as written and not to make a new contract for the parties. The test to determine whether an order is clarified or modified is whether the clarification is reasonable or whether it is so contrary to the apparent intention of the original order as to amount to a modification.

4

(Citations and punctuation omitted; emphasis supplied.) *Greenwood v. Greenwood*, 289 Ga. 163, 164 (709 SE2d 803) (2011). "[W]here a contempt action turns on the meaning of terms in an incorporated settlement agreement, construction of those terms is a question of law that is subject to de novo review on appeal." *Sutherlin v. Sutherlin*, 301 Ga. 581, 582 (802 SE2d 204) (2017); see OCGA § 13-2-1. We construe settlement agreements in divorce cases

> in the same manner and under the same rules as all other contractual agreements. . . . [T]he terms and phrases contained in a contract must be given their ordinary meaning. The construction of a particular phrase that will uphold a contract in its entirety is preferred, and the entire contract must be looked at in the construction of any of its parts. A construction of a contract that renders any portion of it meaningless ought to be avoided whenever possible.

*Kreimer v. Kreimer*, 274 Ga. 359, 361 (1) (552 SE2d 826) (2001).

As outlined above, the divorce judgment provided that the parties' obligations had to be timely performed, and the settlement agreement incorporated into it provided that Brittingham was to satisfy the indebtedness on the house by June 30, 2024, and that she was to cease using Hawbaker's name by August 4, 2022. Specifically, the divorce decree provided that each party was required to "timely perform" obligations under the settlement agreement, and "*[u]pon a party's failure to*

5

*timely do so*, the [c]ourt shall entertain and grant" a motion for contempt. (Emphasis supplied.)

> Conditions precedent are created by language such as "on condition that," "if," and "provided," or by explicit statements that certain events are to be construed as conditions precedent. In determining whether a contract contains a condition precedent, we look to the language of the agreement itself. If the language is plain and unambiguous and the intent may be clearly gathered therefrom, we need look no further. Conditions precedent "must be performed before the contract becomes absolute and obligatory upon the other party." OCGA § 13-3-4. Although conditions precedent are generally not favored under Georgia law, where the language of the contract clearly creates such a condition, that condition must be enforced.

(Citations and punctuation omitted.) *Moore v. Humble*, 368 Ga. App. 672, 674-675 (1) (890 SE2d 28) (2023).

Here, the parties' agreements clearly conditioned Hawbaker's performance — and Brittingham's entitlement to a contempt finding against him — on Brittingham's satisfaction of the condition precedent language. That language provied that "[Hawbaker] will, *upon [Brittingham's] performance* of all obligations . . . dismiss [Brittingham], with prejudice, as a party" in the Pike County lawsuit. (Emphasis supplied). See *Moore*, 368 Ga. App. at 674 (1). Hawbaker contends that Brittingham did not timely perform.

(a) *The mortgage refinancing.* The settlement agreement required Brittingham to refinance or otherwise satisfy the indebtedness on the mortgage by June 30, 2022.

At the hearing, Brittingham testified that it took several months to get the settlement agreement in place. She testified that her attorney prepared a settlement agreement that Hawbaker refused to sign. The record shows that the divorce decree and settlement agreement were fully executed on June 22, 2022. On cross examination, when Hawbaker, acting as his own counsel, asked Brittingham if he had done anything to delay the refinancing, she responded, "It's possible because it was harder. *It was just in your name.*" (Emphasis supplied.) But when she was asked if she had requested Hawbaker to do anything to accommodate the payoff that he did not do, Brittingham responded, "No." Brittingham testified that she could not refinance the mortgage under the short timeline outlined above, despite her diligent efforts to do so, because the mortgage company was having "problems" which she did not clearly recall. She was able to close on the refinancing on August 12, 2022. Again, under the terms of the parties' agreement, Brittingham was required to complete the refinancing by June 30, 2022.

(b) *The name change.* The settlement agreement required Brittingham to change her last name from "Hawbaker" and to cease using Hawbaker's name by August 4,

2022. At the hearing, Brittingham testified that although she initially filed an action seeking a name change, the trial court dismissed it, finding that the name change had to be accomplished within the divorce itself. Brittingham thus was unable to begin the name-change process until the final divorce decree issued on July 25, 2022, just more than a month after the settlement agreement was fully executed.

According to the transcript, Brittingham testified that she changed her name on various legal documents, including her Social Security card, driver's license and passport, but that she had "no idea" which of those name changes occurred before the August 4, 2022 deadline. She acknowledged, however, that she took out the mortgage to refinance the house, which closed August 12, 2022, under the "Hawbaker" name, and that as of November 2022, her Georgia real estate license still carried the name "Hawbaker," and it "could" have carried the "Hawbaker" name as late as February 2023. By the time of the contempt hearing in June 2023, she testified, the license was in her own name and she no longer introduced herself, or signed documents, using Hawbaker's name.

(c) *The trial court's order.* Following this testimony, the trial court asked Hawbaker if he intended to dismiss Brittingham from the Pike County lawsuit. He

responded, "No . . . because she did not timely comply with these obligations" and because she had not requested any extension of time to comply.[2] The trial court responded, "I find your position unreasonable. I find your position contrary to this settlement agreement. And I'm going to order that you do so. I'm going to find that she has performed her obligations to the best of her ability in the spirit of this order."

The trial court's written order[3] found that Hawbaker "prepared" the settlement agreement and the agreed consent to final judgment of divorce and that "the evidence presented shows that [Hawbaker's] delay in doing so delayed the entry of the [f]inal [j]udgment and thereby hindered [Brittingham's] ability to perform her obligations sooner." The record evidence does not support the trial court's finding.

Although Brittingham testified that Hawbaker refused to sign the settlement agreement her attorney prepared, neither party points to evidence in the record

---

[2] When Hawbaker asked Brittingham on cross examination if she had requested any changes to the terms of the settlement agreement, her reply was not recorded by the court reporter, although Hawbaker's statements at that juncture indicate that she did reply.

[3] "We recognize that a trial court's written judgment ultimately controls over any prior oral statements. But a court's oral pronouncements on the record may provide insight on the intent of that judgment." *Infinite Energy v. Cottrell*, 295 Ga. App. 306, 311 (5) (671 SE2d 294) (2008).

showing who prepared the agreements the parties ultimately signed. In any event, as noted above, Brittingham testified that the refinancing was delayed because the initial mortgage was solely in Hawbaker's name. She acknowledged that Hawbaker did not refuse to do anything she asked of him regarding the payoff. She also testified that while it was not possible for her to refinance the mortgage under such a short timeline, this was because the mortgage company was having problems. When asked about the tardy name change on her real estate license, she referred only to the multiplicity of things that needed to be done and the expenses associated with changing her real estate signage. She did not say Hawbaker caused the delay.

The trial court's written order holding Hawbaker in contempt found that Brittingham had "*timely* performed all obligations" under the terms of the settlement agreement. (Emphasis supplied.) Again, however, there is no evidence to support this finding. Brittingham testified, without contradiction, that she did not complete the refinancing of the home until August 12, 2022, despite the June 30, 2022 deadline. She also testified that she was still using the name "Hawbaker" on her real estate license in November 2022, and possibly as late as February 2023. The terms of the divorce decree and settlement agreement required her to have completed this task by August 4, 2022.

It is clear from the record before us that Brittingham did not satisfy the conditions precedent, required in the decree and settlement agreement, that would have triggered Hawbaker's duty to dismiss her from the Pike County lawsuit. "When a plaintiff's right to recover on a contract depends upon a condition precedent to be performed by [her, she] must allege *and prove* the performance of that condition ... *or* allege a sufficient legal excuse for its nonperformance." (Citation and punctuation omitted; emphasis supplied.) *Sagon Motorhomes v. Southtrust Bank of Ga.*, 225 Ga. App. 348, 350 (2) (484 SE2d 21) (1997).

In this instance, the plain language of the divorce decree and settlement agreement required Brittingham to meet her obligations by particular dates in order to trigger Hawbaker's obligation to dismiss her from the lawsuit. Brittingham's testimony that she did not timely perform is uncontradicted. The trial court's order modified the agreement's terms by effectively negating or deleting the dates and conditions precedent. The trial court also found, despite evidence to the contrary, that Brittingham had timely complied. As discussed above, there is no evidence that Hawbaker's actions caused a delay that prevented Brittingham's compliance;[4] in fact,

---

[4] We note that because this case involves a divorce decree and an attached settlement agreement, it involves both a contract and a judgment. Hawbaker points

she cited other factors for the delay, including the fact that Hawbaker was the sole obligor on the mortgage, that the mortgage company was having "problems," and the expenses of changing her name on her real estate signage. While it is true that a trial court has the power to ensure that there is compliance with the "spirit" of a decree, it cannot modify the original judgment being enforced. *Darroch v. Willis*, 286 Ga. 566, 570 (3) (690 SE2d 410) (2010); see *Ziyad v. El-Amin*, 293 Ga. 871, 872 (750 SE2d 337) (2013) ("It is settled law, of course, that a court cannot modify a final decree of divorce on a motion for contempt"). A trial court must use its "broad discretion to enforce the letter and the spirit of the decree . . . without modifying the original judgment that is being enforced." (Citation and punctuation omitted.) *Greenwood*, 289 Ga. at 164 (finding, where husband failed to timely refinance a mortgage and remove wife's liability for the mortgage in violation of a divorce decree that provided a $10,000 penalty for noncompliance, that trial court impermissibly modified the divorce decree when it held husband in contempt and, because of "market conditions," converted the decree's monetary penalty into a lien on the residence).

to *Leventhal v. Citizens and Southern Nat. Bank*, 249 Ga. 390, 393 (3) (291 SE2d 222) (1982) (finding "[i]mpossibility of performance is a defense relating to contracts, not to judgments. . . . [W]here A sues B on a contract and they enter into a consent judgment, B cannot later set that judgment aside on the basis of an impossibility of performance . . . ."); accord *Kothari v. Tessfaye*, 318 Ga. App. 289, 294-295 (1) (a) (i) (733 SE2d 815) (2012).

For the reasons outlined above, we find that the trial court impermissibly modified the divorce decree and settlement agreement to render meaningless the language providing for conditions precedent to Hawbaker's obligations. As OCGA § 13-3-4 provides, "[a] condition precedent must be performed before the contract becomes absolute and obligatory upon the other party." See generally *Lotus Property Dev. v. Greer*, 278 Ga. App. 773, 775 (1) (630 SE2d 112) (2006) (physical precedent only) (finding that where the plain language of a contract "specified a date" by which parties had to close a contract or it would expire, and where it was "uncontested" that the closing did not occur by that date, the trial court did not err in finding that, absent a valid extension, the contract expired by its own terms).

Since the agreement cannot be read to establish an intent of the parties that Hawbaker be required to dismiss Brittingham from the Pike County lawsuit if she failed to meet the deadlines for refinancing the home and ceasing use of Hawbaker's name, "the trial court's order creating such a requirement amounted to a modification of the decree, not an interpretation. Since the trial court was not authorized to modify the decree, its order[] [finding that Brittingham had timely complied] and holding [Hawbaker] in contempt for failing [to dismiss her from the Pike County lawsuit] must be reversed." *Roquemore v. Burgess*, 281 Ga. 593, 595 (642 SE2d 41) (2007) (reversing

13

contempt order where settlement agreement permitted payment from any of three other sources but where trial court impermissibly modified divorce decree to require husband to sell a home in order to pay wife).[5]

2. Because of our determination in Division 1, we need not address whether the trial court erred in failing to dismiss Brittingham's contempt petition for failure to state a claim, or whether it used the wrong dates when it stayed enforcement of the contempt order against Hawbaker after he filed a supersedeas.[6]

*Judgment reversed. Doyle, P. J., and Watkins, J., concur.*

---

[5] Hawbaker is prevailing in this appeal because it is legally and technically correct under the terms of the parties' agreements for him to do so. We recognize, however, that the divorce process as a whole involves much more than the plain language of the parties' agreements. In this holistic context, it is vitally important that parties work together — beyond a focus only on legalities and technicalities — to effectuate a resolution that is reasonable and beneficial to both sides and does not waste the resources of the court system.

[6] In any event, Hawbaker did not raise this latter contention in his application for discretionary review. See *Zekser v. Zekser*, 293 Ga. 366, 369 (2) (744 SE2d 698) (2013) ("An application for discretionary review must 'enumerat[e] the errors to be urged on appeal,' OCGA § 5-6-35 (b), and so, when we grant discretionary review, it necessarily is limited to the errors actually enumerated in the application.").