### CALDWELL v. STEVENS.

No. 7255—Opinion Filed May 22, 1917.

Rehearing Denied Sept. 25, 1917.

(167 Pac. 610.)

(Syllabus by the Court.)

1. **Set-Off and Counterclaim — Power of Court—Grounds.**

The power to allow a set-off of debts by a court of equity exists independent of the statute, where grounds of equitable interposition are shown, such as fraud, embarrassment in enforcing the demand at law, or special circumstances, such as insolvency or nonresidence, which render it probable that party will lose his demand and be compelled to pay the demand of the other.

2. **Pleading—Set-Off—Sufficiency.**

Record examined, and held, that the fourth paragraph of defendant's answer states facts sufficient to afford occasion for the exercise of jurisdiction by a court of chancery to decree a set-off. Held, further, that the evidence adduced at the trial is sufficient to

support the findings and decree of the trial court as herein modified.

Error from District Court, McClain County; R. McMillan, Judge.

Suit by William E. Caldwell against Frank D. Stevens. Judgment for defendant, and plaintiff brings error. Modified and affirmed.

J. W. Hocker, for plaintiff in error.

Dorset Carter, J. B. Dudley, and Vaught & Brewer, for defendant in error.

KANE, J. This was a suit commenced by the plaintiff in error, plaintiff below, against the defendant in error, defendant below, in the Indian Terriory, prior to statehood, for the purpose of recovering upon two promissory notes, for $1,500 each, and foreclosing a certain real estate mortgage executed for the purpose of securing their payment. Hereafter the parties will be called "plaintiff" and "defendant," respectively, as they appeared in the court below.

The petition was in the usual form, and admittedly states a cause of action. The answer of the defendant admitted the execution of the notes and mortgage, but denied the right of the plaintiff to recover because of a certin oral agreement, made and entered into by and between said plaintiff and defendant, by the terms of which plaintiff obtained possession of the mortgaged premises and collected rents arising therefrom in an amount more than sufficient to discharge the indebtedness evidenced by the notes. The defendant, in the fourth paragraph of his answer, also alleged by way of set-off that at about the time the instruments described above were executed the defendant executed another note for $1,500, payable to the plaintiff, to secure the payment of which he executed a certain other mortgage on other lots situated in the city of Purcell, and that by the terms of another agreement resting in parol plaintiff took possession of said last-mentioned real estate and agreed to apply the rents received therefrom to the satisfaction of said last-mentioned note; that the plaintiff received large sums of money arising as rents from said property, the exact amount of which defendant does not know; that plaintiff, by some means, obtained title to said last-mentioned real estate, and sold the same without the consent of the defendant for the sum of $2,300; that the sums received on account of said transaction greatly exceed the amount of said $1,500 note— wherefore the defendant prayed an accounting and judgment over against the plaintiff for the excess.

The plaintiff filed a reply to the defensive matter in the paragraph of the defendant's answer relating to the first two notes and

mortgage, denying that he had possession of the first-mentioned premises, except for a part of the time alleged, and admitting that he had collected rents, but alleging he had from time to time paid the taxes and insurance and made repairs on the mortgaged premises by direction of the defendant, and that a full complete statement of such account had been from time to time rendered the defendant, and a final statement of account thereof rendered prior to bringing this suit showed that a balance of $1,722 remained due said plaintiff on the first notes and mortgage after deducting the net proceeds arising from the rents of said real estate. To the fourth paragraph of the answer the plaintiff filed a demurrer, suggesting that, inasmuch as the cause of action pleaded by way of set-off sounded in tort and was not connected with the matter sued upon, the same did not state facts sufficient to constitute a defense to plaintiff's cause of action, which demurrer was overruled by the court; whereupon the plaintiff filed a reply to the answer. The reply to the matter pleaded by way of set-off alleged in effect that said last note was wholly unpaid; that at the time defendant borrowed said money from the plaintiff and executed said last note and mortgage, he had no title to the land described therein, the same being in the United States in trust for the Chickasaw Tribe of Indians; that plaintiff purchased the right to take a patent thereto from the government, which he subsequently did, thereby acquiring title to said lot in his own name. Plaintiff also pleaded the statute of frauds and limitations.

On the issues thus joined, the cause was tried to the court, after statehood, and resulted in a judgment in favor of the defendant, canceling all the notes and mortgages and rendering a money judgment against the plaintiff in the sum of $1,140.55, to reverse which this proceeding in error was commenced.

It seems to be conceded by the parties that, inasmuch as this cause was pending upon the advent of statehood, the laws of Arkansas, in force in the Indian Territory, continue to govern the matter of the preparation of the record for appeal and the review of the questions raised; and it is upon this theory the record will be examined. Whilst the brief of counsel for plaintiff in error contains many formal specifications of errors, a careful examination thereof discloses that they all may be summarized for review under the following headings: (1) The trial court erred in overruling the demurrer of the plaintiff to the matter set up in defendant's answer by way of set-off, for the reason that unliquidated damages may not be the subject of set-off in a foreclosure proceeding; (2) the statutes of limitations and the statute of frauds constitute a complete bar to the cause of action attempted to be set forth in the paragraph of the defendant's answer wherein he attempts to plead a set-off; (3) the judgment rendered by the trial court is not supported by sufficient evidence.

As we have seen from the foregoing statement and specifications of error, the demurrer to the fourth paragraph of defendant's answer is based upon the theory that inasmuch as the cause of action pleaded by way of set-off sounds in tort, and is not connected with and did not grow out of plaintiff's cause of action, it is not available as a set-off against the plaintiff in an action founded upon contract. In order to fully understand the nature of the transaction now under discussion, a brief statement of the relation existing between the plaintiff and defendant at the time these notes were executed is necessary: The plaintiff, William E. Caldwell, resided at Louisville, Ky., and was president of the Purcell Mill & Elevator Company, of Purcell, Okla.; the defendant, F. D. Stevens, lived at Wichita, Kan. Stevens and Caldwell seem to have been good friends for many years, and on several occasions had embarked in business ventures together at Wichita and elsewhere. Finally Caldwell engaged Stevens to move to Purcell and become manager of the Purcell Mill & Elevator Company, and while at Purcell Mr. Stevens purchased, or built, the Helena Hotel property, borrowing from Mr. Caldwell $3,000, and executing therefor the first two promissory notes and the mortgage upon which this suit was commenced. About the same time Stevens contracted to purchase from one David Mayes a residence lot, upon which he erected a residence, and in order to enlarge or rebuild the house he borrowed an additional $1,500 from Mr. Caldwell, to secure which he executed the second note and mortgage. All of these transactions occurred prior to the time the title to the townsite of Purcell was transferred to the occupants of the lots by the townsite commission, and while the title to the land was still in the United States as trustee for the Chickasaw Tribe of Indians.

The second mortgage contained a provision to the effect that Stevens would appear before the proper court, commission, or tribunal appointed pursuant to law for the purpose of procuring a deed in due form to said lot, and that, in the event he failed to do so for any reason whatever within six weeks after notice served on him that such lots were for sale, Caldwell was authorized to appear before such commission for said purpose, and in the event this was done the improvements

placed upon said lot by Stevens would be considered the property of the second party (Caldwell) for said purpose, subject to the equities of said Stevens, and the lien thereby created should include in addition to the deferred payments such additional sum as said Caldwell may have expended, including any incidental fees or costs in the payment of said sum necessary to procure title from said commission or other proper authority to said premises. The mortgage also contained a provision to the effect that, in the event Stevens failed for any reason to procure the absolute title to said premises from said townsite commission, or defaulted in the payment of said first payment, as provided by law, then and in that event Caldwell might at his election declare a default in the terms of said mortgage and be entitled to declare possession thereof for the purpose of foreclosure. This provision, which was commonly inserted in mortgages on town lots in the Indian Territory executed before legal title thereto was acquired from the various townsite commissions, was for the purpose of showing the relation existing between the parties and to provide a means for the protection of the mortgagee in the event the mortgagor failed to perfect his title to the mortgaged premises. By this provision the mortgagee in certain circumstances was authorized to make the proof, etc., necessary to vest the title in the mortgagor, and in the event this was done the improvements placed upon the lot by the mortgagor were considered the property of the mortgagee for such purpose only, and the lien created by the mortgage covered the sums thus necessarily expended in addition to the principal sum.

The fourth paragraph of the answer alleged in effect that, instead of making application for the lot in the name of Stevens pursuant to the foregoing provision of the mortgage, Caldwell made application and took a deed thereto in his own name; that while Caldwell was in possession of said lot he received large sums of money arising as rents therefrom, for which he never accounted; and that subsequently he sold the lot to one Thacker for the sum of $2,300. The prayer is that Stevens shall have judgment for the rents and profits thus collected, and for the sum of $2,300, the amount received for said lot by Caldwell. In our judgment, the facts alleged in the fourth paragraph of the answer clearly charge the breach of a trust relation on the part of the plaintiff, which, in the circumstances of this case, constitute a proper subject for an equitable set-off.

The power to compel a set-off of debts was exercised by courts of equity prior to any statute on the subject, and exists independent of those statutes, being allowed upon the general principles of equity and upon the equitable jurisdiction of the court over its suitors, and statutes allowing set-offs have not taken away the equitable jurisdiction, but have merely provided a remedy at law for the set-off of mutual claims between parties, which might always have been done in equity. 34 Cyc. 633. Of course, some grounds for equitable interposition must be shown, such as fraud, embarrassment in enforcing the demand at law, or special circumstances, such as insolvency or nonresidence, which render it probable that the party will lose his demand and be compelled to pay the demand of the other. 19 Enc. Pl. & Pr. p. 719.

In the case at bar, as we have seen, both fraud and diversity of residence on the part of the plaintiff and defendant are shown. The nonresidence of a party having a claim which he is enforcing, or about to enforce, against one having a demand against him, is frequently mentioned as affording occasion for the exercise of the jurisdiction of a court of chancery to decree a set-off, and in some cases relief has been granted upon this ground alone. Livingston v. Marshall, 82 Ga. 281, 11 S. E. 542; Hannon v. Hilliard, 83 Ind. 362; Davis v. Milburn, 3 Iowa, 163; Gemmell v. Hueben, 71 Mo. App. 291; Blount v. Windley, 95 U. S. 173, 24 L. Ed. 424; North Chicago Rolling Mill Co. v. St. Louis Ore, etc., Co., 152 U. S. 596, 14 Sup. Ct. 710, 38 L. Ed. 565; Quick v. Lemon, 105 Ill. 578; Aldridge v. Birney, 7 T. B. Mon. (Ky.) 344, 18 Am. Dec. 183; Smith v. Field, 6 Dana (Ky.) 361; Forbes v. Cooper, 88 Ky. 285, 11 S. W. 24. Whilst it is true that as a general rule equity follows the law in regard to matters of set-off, in this case an application of the rule would not affect the conclusion reached, as the governing statute herein (subdivision 4, sec. 5033, Mansf. Digest) provides that the defendant may set up in his answer "as man grounds of defense, counterclaim and set-off, whether legal or equitable, as he shall have."

As the second assignment of error is based upon the assumption by the plaintiff that his theory as to the legal effect of the facts alleged in the fourth paragraph of the answer by way of set-off would be sustained by the court, it will not be necessary to dwell upon that point, in view of the conclusion we have hereinbefore reached. This leaves for consideration the question of the sufficiency of the evidence to support the findings of fact of the trial court and the judgment and decree rendered thereon. In considering this question the relation of the parties to each other at the time these con-

tracts were entered into must be constantly kept in mind. As we have seen, at that time Caldwell and Stevens were firm friends, each apparently having the greatest confidence in the honesty and integrity of the other. Stevens seems to have turned the hotel property, upon which the first mortgage was given, over to Caldwell for the purpose of applying the rents in extinguishment of the two promissory notes, and almost immediately left the state, paying practically no more attention to the matter until about the commencement of this suit, evidently relying upon Caldwell to keep and render a correct account of the matter. The testimony offered by the defendant in support of his defense was to the effect that the hotel property was constantly rented at a monthly rental of $100 per month from the early part of the year 1903 for a period of four years, during which time the rentals were turned over to the plaintiff. The plaintiff on this point introduced no evidence whatever. The court found that the plaintiff had received $4,800 in rents on the hotel property during that time, and had expended 998.04 for repairs, taxes, etc., for which he was allowed credit. This left a balance in favor of the defendant on the first notes and mortgage of $311.04 over and above the face of the said notes, wtih interest. We think this finding is reasonably sustained by the evidence, and therefore decline to disturb it.

On the issues of fact joined by the fourth paragraph of the answer, and the reply thereto, the court found that the plaintiff collected rents from the property therein described and after acquiring title thereto in his own name he sold the same to Thacker for the sum of $2,300. Summarizing his findings, the court further found that the rents collected by the plaintiff, Caldwell, should be applied annually as a credit on the three notes involved in this controversy, and that the value of the Thacker property should also be applied with the said rents upon the three notes in controversy, and, after applying said rents, to wit, $5,400, and the further sum of $2,300, being the value of the Thacker property, to the satisfaction of the notes, and the amount paid by said Caldwell for repairs, there remained due and payable to this defendant, at the time of the institution of this suit, the sum of $1,140.54, for which sum judgment was entered. We are unable to glean from the record before us any satisfactory evidence sustaining the finding of fact of the trial court as to the $600 found to be collected as rents for the Thacker property, and in this respect the findings will be modified. It is entirely clear, however, that after the execution of the second note

and mortgage by the defendant, and his departure from Oklahoma, the plaintiff treated the lot described in the mortgage as his own, and proceeded to acquire title thereto in his own name, contrary to the provision of the mortgage hereinbefore referred to. There is also evidence which reasonably tends to show that, after acquiring title to the lot, the plaintiff sold the same to Thacker for the sum of $2,300. In our judgment, the court was right in allowing the defendant a credit for this amount. In view of the conduct of the plaintiff toward this property, it seems to us that he has no just ground for complaint for being compelled to turn over to the defendant the precise sum received for the property. This part of the decree of the trial court approximates equity between the plaintiff and defendant, and also leaves the title to the property undisturbed in Thacker, the grantee of the plaintiff, who appears to be an innocent purchaser thereof in fact, if not in law.

It is quite true that the testimony offered by the defendant for the purpose of establishing his case was not as clear and definite as might ordinarily be desired; but by the very nature of the arrangement entered into, and the relation existing between the plaintiff and defendant at the time these various contracts were made, it is apparent that the latter was justified in implicitly relying upon the former to keep and render a correct account of all moneys received, pursuant to the agreement between them. In these circumstances, when the defendant was called upon to make his defense, he, no doubt, offered the best evidence he had at his disposal, and, as the plaintiff was present at the trial and heard all the evidence offered by the defendant, which tended to trace large sums of money into his hands, without attempting to offer any testimony to the contrary, his silence and failure to speak will be treated as an admission of the truthfulness of all that was said about him. In 2 Chamberlayne's Modern Law of Evidence, p. 1295, the rule is stated as follows:

"As has been said, the infirmative inferences against the defendant from his failure to testify do not create independent facts in favor of the contention of the opposing party; but when that side definitely asserts the existence of a fact, which the suppressing party could readily disprove, if it were false, such evidence as can be produced in favor of the contention made will be judged in connection with the circumstances of the suppression. A failure to testify is, therefore, in the nature of an admission by conduct, as well as a deliberative fact of subjective relevancy."

On the whole case, we are satisfied that,

with the exception of the $600 item hereinbefore mentioned, the judgment and decree of the trial court was right and equitable, and, as herein modified, it will be affirmed.

SHARP, C. J., disqualified and not sitting; TURNER, HARDY, THACKER, BRETT, OWEN, RAINEY, and MILEY, JJ., concur.