## THOMPSON v. COKER.

No. 15401—Opinion Filed July 7, 1925.

Rehearing Denied Nov. 17, 1925.

**1. Deeds—Invalidity of Illiterate Indian's Deed Fraudulently Obtained—Reformation.**

Where an illiterate Indian is induced by false and fraudulent representations to sign a certain warranty deed, under the belief that he was signing a contract authorizing defendant to employ attorneys to represent him in a cause then pending in court, and to look after and protect the Indian's interests therein, and it appearing there was no negligence on the Indian's part, such deed is absolutely void and conveys no title to the grantee, and such instrument will be reformed in equity to speak the truth.

**2. Evidence—Failure to Testify Construed as Admission.**

Where fraud in the procurement of the execution of a deed is alleged and the plaintiff introduces evidence to support the allegations of fraud, and the defendant does not testify or offer any evidence to controvert the plaintiff's evidence, the infirmative inferences against the defendant from his failure to testify do not create independent facts in favor of the contention of the plaintiff, but when that side definitely asserts the existence of a fact, which the suppressing party could readily disprove, if it were false, such evidence as can be produced in favor of the contention made will be judged in connection with the circumstances of the suppression. A failure to testify is, therefore, in the nature of an admission by conduct, as well as a deliberative fact of subjective relevancy.

**3. Same—Presumption from Silence.**

Where it lies within the power of a party to an action to produce evidence upon an issue, and he fails, the presumption follows that the evidence, if produced, would be unfavorable to the cause of such party.

**4. Same—Failure of Defendant to Testify in Action to Reform Instrument on Ground of Fraud.**

In a trial of an action to reform a contract, or written instrument, for fraud and misrepresentation as the procuring cause of the execution of the instrument, where the plaintiff produces evidence of facts and circumstances sufficient to make prima facie proof that the execution of such instrument was procured by fraud and misrepresenta-

tion, the failure of the defendant, although present in court, to offer proof or explanation of such facts and circumstances tending to show that his part in such transaction was an honest one, affords strong evidence of fraud.

## 5. Appeal and Error—Sufficiency of Evidence—Review of Equity Case.

In cases of purely equitable cognizance, when the findings and judgment of the court are not clearly against the weight of the evidence, the same will not be disturbed on appeal because of alleged insufficiency of the evidence.

## 6. Same—Burden to Show Error—Admission of Incompetent Evidence.

In cases tried to the court, where complaint is made that incompetent evidence was admitted, unless it is shown and clearly pointed out wherein such incompetent evidence was clearly considered and used by the court in arriving at its judgment, no reversible error is presented, unless it can be said, upon the whole case, that there was not competent evidence in the record reasonably tending to support the judgment based thereon.

## 7. Same—Sufficiency of Evidence.

Where there is any competent evidence reasonably tending to sustain the judgment of the trial court, the same will not be disturbed on appeal.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Okfuskee County; John L. Norman, Judge.

Action by Charles Coker against J. E. Thompson. Judgment for plaintiff, and defendant appeals. Affirmed.

J. W. Wright, C. T. Huddleston, and Logan Stephenson, for plaintiff in error.

Martin L. Francis, James C. Davis, and R. P. Hill, for defendant in error.

Opinion by RUTH, C. The parties to this action will be designated as they appeared in the trial court. The plaintiff, Charley Coker, brought his action against defendant, J. E. Thompson, to reform a contract, and for accounting of monies received by defendant for royalties and sale of certain lands. Plaintiff is a Creek Indian and heir of Emma Coker, deceased, and his petition alleges Emma Coker's distributive share of the lands of the Creek Indian Tribe was the "N. W. ¼ of section 16, twp. 8 north, range 7 E. I. M." That on April 15, 1915, the United States commenced its suit in behalf of the Creek Tribe for the purpose of canceling and annulling the deeds of patents conveying land to a large number of the members of the Creek Tribe. The style of the case in the United States District Court being U. S. of America v. Nettie Lena, Alias Emma Coker, et al. (naming all defendants) equity No. 2165. That prior to the institution of the suit, plaintiff claimed and asserted a valid subsisting interest in and to the lands, and all royalties, rents, issues and profits arising therefrom. And after the institution of the suit by the United States, plaintiff employed reputable attorneys to represent him and protect his interests.

Plaintiff was 65 years of age, was not acquainted with the white men's methods of transacting business, and had a distrust and dislike for the white race. He could not speak, read or write the English language, more than to write his name. That because of the "Crazy Snake" uprising, plaintiff was indicted for murder. That defendant was an educated negro, and a shrewd, capable business man, and plaintiff met defendant through a Creek Indian interpreter, and defendant, after many meetings, gained the confidence of plaintiff and convinced him that the white attorneys were neglecting plaintiff's interests in the United States court and were incapable and incompetent, and at the time, plaintiff was hiding out and could not appear in public on account of the indictment against him. That defendant agreed to supervise and attend to plaintiff's interests in the suit and to employ competent attorneys, and in the event of a recovery of the whole or part of plaintiff's property, this defendant was to receive a reasonable compensation for his services. Defendant presented plaintiff with a written instrument some time after negotiations were opened, and falsely and fraudulently represented the instrument to be a contract embodying the terms agreed upon, and plaintiff, relying upon the false and fraudulent representations, signed and acknowledged the instrument, which later developments proved to be a warranty deed, conveying the lands to defendant in consideration of $5,000. The instrument bears date as of March 4, 1916, and plaintiff prays that the instrument be reformed to speak the truth and to embody the real agreement.

For a second cause of action, plaintiff alleges that on, to wit, September 14, 1916, defendant filed his petition in the United States court and asked that he, Thompson, this defendant, be made a party defendant and be permitted to plead, answer and defend, and alleged he had acquired all the right, title and interest of this plaintiff by virtue of a warranty deed, but plaintiff alleges the warranty deed was none other

than the written instrument plaintiff was induced to sign upon the false and fraudulent representations of defendant. That about April 20, 1918, the defendants in the cause in the United States court effected a compromise, and the Charley Coker interests were fixed at eleven-fourtieths, and the other interests were determined, and it was further agreed that F. V. Faulkner should hold all royalty oil and gas interests in trust for the respective parties. The United States District Court found for the defendants. The cause was appealed to the United States Circuit Court and the judgment of the district court was affirmed, and the royalties, rents and profits were by the United States paid over to Faulkner, and Faulkner paid to J. E. Thompson, this defendant, approximately $25,000, as the proportionate share of the Charley Coker interests, and thereafter the defendant, acting under an assumed ownership, sold and conveyed future rents and royalties for the sum of $10,000, and appropriated the said sums to his own use, and refuses to make an accounting or to pay the money so received to the plaintiff, and plaintiff prays an accounting and recovery of $35,000, less reasonable compensation due defendant, and expenses incurred by defendant. Defendant denies the allegations in the petition and states he purchased the lands, and paid $5,000 therefor.

A jury was impaneled, and after the plaintiff introduced his evidence and rested, defendant filed his demurrer, and upon the court overruling same, defendant introduced his deed and rested, and requested an instructed verdict for defendant, which requested instruction was by the court refused, and upon judgment being rendered for plaintiff, defendant appeals.

The plaintiff's evidence discloses that he and defendant met "out in the woods," the meeting being brought about by Soocer Burnett, a Creek Indian, who spoke Creek and English and acted as interpreter. Defendant wanted to handle plaintiff's case for him, but the agreement was not consummated for some months after the first meeting, and after the parties had met several times. Plaintiff at this time was "scouting," that is, he was "hiding out," for fear he would be killed because of matters growing out of the "Crazy Snake" uprising. Defendant at first meeting gave plaintiff $5, and on one or two occasions gave plaintiff as much as $1.50. On August 27, 1917, defendant gave plaintiff $1,500, saying it was sent by an oil company, and told plaintiff the oil company was to get a lease on Coker's land as soon as defendant got the land

back for Coker. That defendant told plaintiff not to go to Muskogee to the trial of the right of property as a United States marshall was waiting to arrest him and throw him in jail as soon as he appeared. Plaintiff was never advised of the final determination of his case, and the agreement with defendant was that the paper signed by plaintiff was to be returned to him in the event defendant was unable to get the plaintiff's land back for him.

The record also contains the following letter introduced in evidence by the plaintiff. This exhibit bears date as of March 4, 1916, being the same date the deed was signed, and is as follows:

"Clearview, Oklahoma, March 4, 1916.

"This is to certify that as additional consideration, if I fail to get the release of Charley Coker, at his personal request, I will return to him, Charley Coker, a certain deed of land, given by him to me, and that I will not transfer said land without his knowledge.

"Signed       J. E. Thompson.

"Given in my presence this 4th day of March, 1916.

"Noah H. Stark,

"Notary Public."

"(Seal.)

The evidence of plaintiff was corroborated by Soocer Burnett, the interpreter, in all its material parts, and the records discloses that defendant filed his petition in the United States court, asking to be made a party defendant, stating he had purchased Charley Coker's interest and paid him $5,000 for the same, and defendant adopted and refiled Coker's answer in the action as his own. Defendant introduced no evidence but his deed, and did not attempt to deny any of plaintiff's evidence.

The court advised the jury that this was an equity case, and that the jury sat in an advisory capacity, and the only question to be determined by the jury was:

"Was the execution and delivery of said deed obtained from the plaintiff by fraud and misrepresentation of the defendant?"

The court gave the jury correct instructions as to what constituted fraud and misrepresentation, and what proof was necessary to establish same, and that the burden of proof was upon the plaintiff, and the jury answered the interrogatory in the affirmative. The court adopted the jury's finding of fact and entered judgment for the plaintiff, reforming the contract and requiring defendant to account for all monies and things of value collected or received by defendant under the contract as

reformed. Defendant presents his case on appeal on two propositions:

"(1) The evidence was wholly insufficient to establish a contract, as alleged in the plaintiff's petition, to have been entered into on the 4th day of March, 1916, and wholly insufficient to overcome the presumption in favor of a regularly executed and acknowledged warranty deed."

With this proposition, as contended for by defendant, we cannot agree. The evidence on the part of the plaintiff as to the agreement made, the money advanced from time to time, and the statements of defendant as to where he obtained the money given to plaintiff, and the amount thereof, was direct and positive, and was not denied by defendant, nor was there any denial of the execution of the written instrument wherein defendant agreed to return the written instrument to plaintiff in the event of defendant's failure to secure the return of the land to plaintiff. As the defendant offered no evidence to controvert the plaintiff's evidence, but relied entirely upon the deed, we cannot see upon what theory the defendant bases his contention that there was no competent evidence to sustain the judgment of the court. The defendant had the privilege of introducing testimony or standing mute, as he desired, but when he elects to refrain from controverting evidence of the plaintiff, he subjects himself to the rule in such cases.

This court, in Caldwell v. Stevens, 64 Okla. 287, 167 Pac. 610, quotes with approval, Chamberlayne's Modern Law of Evidence, p. 1295, where the rule is stated as follows:

"As has been said, the infirmative inferences against the defendant from his failure to testify do not create independent facts in favor of the contention of the opposing party; but when that side definitely asserts the existence of a fact, which the suppressing party could readily disprove, if it were false, such evidence as can be produced in favor of the contention made will be judged in connection with the circumstances of the suppression. A failure to testify is, therefore, in the nature of an admission by conduct, as well as a deliberative fact of subjective relevancy."

"Where it lies within the power of a party to an action to produce evidence upon an issue and he fails, the presumption follows that the evidence, if produced, should be unfavorable to the cause of such party." Moore v. Adams, 26 Okla. 48, 108 Pac. 392; St. Louis & S. F. R. Co. v. Bruner, 52 Okla. 349, 152 Pac. 1103.

All the evidence introduced tended to prove the plaintiff was unable to read, write, or speak the English language, and was induced to sign the deed by the false and fraudulent representations of the defendant, that the instrument was a contract embodying the terms of the oral agreement.

"Where an illiterate Indian was by false and fraudulent representation induced to sign a certain deed under the belief that he was signing a paper to rectify an oil and gas lease, and it appearing he was not guilty of any negligence on his part, such deed is absolutely void, and does not convey any title to the grantee." McNac v. Brown, 87 Okla. 51, 208 Pac. 268; First National Bank of Watonga v. Wade, 27 Okla. 102, 111 Pac. 205.

In Perry v. Shaver, 101 Okla. 248, 225 Pac. 359, this court said:

"If in trial of an action against a husband and wife, to set aside a conveyance of real property to the wife or to declare the property to be that of the husband, the plaintiff produces evidence of facts and circumstances sufficient to make prima facie proof that such conveyance was made in fraud of the legal rights of the creditors of the husband, the failure of the wife thereupon, although being present in court, to offer affirmative proof or explanation of such facts and circumstances tending to show that her part in such transaction was an honest one, affords strong evidence of fraud."

In the case under review, the evidence of plaintiff certainly made prima facie proof of fraud, and on examination of all the evidence we find there is competent evidence reasonably sustaining the finding of the jury upon the interrogatory submitted, and the judgment of the court.

"In cases of purely equitable cognizance, when the findings and the judgment of the court are not clearly against the weight of the evidence, the same will not be disturbed on appeal." Mid-West Ins. Co. v. Shrtder, 99 Okla. 17, 225 Pac. 541; Flowers v. Flowers, 94 Okla. 134, 221 Pac. 483; Foster v. Whitenton, 96 Okla. 187, 221 Pac. 52; Davis v. Littlefield, 96 Okla. 130, 220 Pac. 830; Claggett v. Hampton, 94 Okla. 252, 221 Pac. 707; Bobier v. Horn, 95 Okla. 8, 222 Pac. 238.

Defendant's second proposition urged is: "The court erred in admitting and considering incompetent, irrelevant and immaterial testimony." In the main, the objection was to the introduction of the records in case of United States v. Coker et al., pending in the United States District Court, showing this defendant had moved the court for leave to intervene and that he be made a party defendant, and claimed to have purchased Charley Coker's interests, and in view of the plaintiff's evidence and the agreement sign-

ed by defendant on the date the deed was executed, wherein defendant agreed to return the deed to plaintiff, and not to transfer the land without plaintiff's knowledge, the evidence became competent and material for the purpose of showing the bad faith, fraud, and misrepresentation of the defendant.

Error is urged upon the introduction of a letter written by one A. A. Datch to B. B. Blakeney, each being of counsel in the case, for different interests and simply set forth the share each defendant in the cause determined by the U. S. Circuit Court of Appeals was entitled to, and was in no manner prejudicial to the rights of this defendant, nor are we able to discover in what manner it was beneficial to the plaintiff. It in no manner affected the question submitted to the jury, and there is nothing in the record to indicate it influenced the court.

"In cases tried to the court, where complaint is made that incompetent evidence was admitted, unless it is shown and clearly pointed out wherein such incompetent evidence was considered and used by the court in making its findings, no reversible error is presented unless it can be said upon the whole case that there was no competent evidence in the record to authorize the findings of fact made by the court, and to sustain the judgment based thereon." Mid-West Ins. Co. of Enid v. Shrader, supra; Ins. Co. of North America v. Cochran, 59 Okla. 200, 159 Pac. 247.

To the same effect are the following: Stone v. Spencer, 79 Okla. 85, 191 Pac. 197; American Fidelity Co. v. Echols, 56 Okla. 228, L. R. A. 1916D, 1176, 155 Pac. 1160; Moore v. A., T. & S. F. Ry. Co., 26 Okla. 682, 110 Pac. 1059; Gernert v. Griffin, 28 Okla. 733, 116 Pac. 439; Kennedy v. Pawnee Trust Co., 34 Okla. 140, 125 Pac. 548.

"Where, upon an examination of the record, the court finds sufficient competent evidence tending to support the verdict of the jury, and the defendant has offered no evidence, and there is no conflict therein as to any material fact, and the instructions given state the law correctly, the Supreme Court will apply the presumpton which the law raises in favor of the proceedings below and the correctness of the verdict and the judgment rendered." Lusk v. Phelps, 71 Okla. 150, 175 Pac. 756.

Finding no error in the record, and the judgment of the court being reasonably sustained by competent evidence, the judgment of the trial court should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 34 Cyc. p. 921. (2) 22 C. J. p. 321, § 356. (3) 22 C. J. pp. 121, 122, § 57. (4) 22 C. J. pp. 121, 122, § 57. (5) 4 C. J. p. 900, § 2869. (6) 4 C. J. p. 732, § 2662. (7) 4 C. J. p. 853, § 2834.