LEWIS v. INMAN



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:LEWIS v. INMAN

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 LEWIS v. INMAN
2018 OK CIV APP 66
Case Number: 116205
Decided: 10/02/2018
Mandate Issued: 10/31/2018
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2018 OK CIV APP 66, __ P.3d __

 

DORRICE LEWIS (formerly SARTIN), Plaintiff/Appellant,
v.
ROBERT K. INMAN, Personal Representative of the ESTATE OF EDDIE RAY INMAN, Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF
ROGERS COUNTY, OKLAHOMA

HONORABLE SHEILA A. CONDREN, TRIAL JUDGE

AFFIRMED

Wilfred K. Wright, Jr., WRIGHT LAW, PLC, Claremore, Oklahoma, and
William R. Higgins, HIGGINS LAW, Claremore, Oklahoma, for Plaintiff/Appellant

Sidney K. Swinson, Brandon C. Bickle, GABLEGOTWALS, Tulsa, Oklahoma, for Defendant/Appellee

JANE P. WISEMAN, PRESIDING JUDGE:

¶1 Plaintiff Dorrice Lewis (formerly Sartin) appeals from orders of the trial court granting summary judgment in favor of Defendant Eddie Ray Inman and denying her motion to reconsider. We are asked to consider whether granting summary judgment in favor of Inman was proper and whether it was an abuse of discretion then to deny Lewis's motion to reconsider. This appeal proceeds according to Oklahoma Supreme Court Rule 1.36, 12 O.S. Supp. 2017, ch. 15, app. 1, without appellate briefing. After review, we affirm.

FACTS AND PROCEDURAL BACKGROUND

¶2 In their March 5, 2013 petition, Lewis and Terry Lee Sartin (Plaintiffs)[1] allege they entered into an employment agreement with Inman on December 15, 2004, pursuant to which, "upon the payment of forfeitures and all expenses related therewith, and the release and expungement of all bonds or undertakings any balance in the Build Up Fund[] was to be disbursed fifty percent (50%) to Defendant [and] the remaining fifty percent (50%) to Plaintiffs." Plaintiffs demanded an accounting of the Build Up Fund and asserted claims for breach of contract and breach of fiduciary duty.

¶3 Inman filed an answer and counterclaim, stating that he is a licensed professional bondsmen who employed Lewis from December 2004 through December 2007 and Sartin from December 2004 through August 2007. He admitted there was a Build Up Fund and that the contract provided that it should be disbursed as claimed by Plaintiffs. He denied any funds are owed to Plaintiffs because they owed him money and they agreed to turn over the Build Up Fund to repay him. Inman asserted that although Plaintiffs executed a promissory note payable to Inman for $50,000 and a second mortgage to secure the note, Plaintiffs never made a payment and defaulted on the note. He claimed that, when the first mortgage holder, RCB Bank, sued to foreclose on the property secured by the mortgages, "the Plaintiffs contacted the Defendant about the foreclosure and made an agreement to have the Defendant release his mortgage and note . . . in return for the transfer of all the [Plaintiffs'] claims to the build up fund." Inman says he relied on Plaintiffs' statements and released the mortgage. Inman asserted that, if the court finds against the terms of his agreement with Plaintiffs, it should grant him judgment against the Plaintiffs for $66,286.16, plus interest, costs, and attorney fees. Inman further claimed that Lewis owed him $3,932.72 for unpaid bond premiums and Sartin owed him $1,097.86 for a loan.

¶4 In her answer to Inman's counterclaims, Lewis denied she entered into an agreement for the release of the mortgage or that she owed him money for unpaid premiums.

¶5 Lewis filed a motion for summary judgment in which she claimed as undisputed the facts we now summarize and quote. Lewis entered into an employment agreement with Inman, who is a professional bondsmen licensed by the State of Oklahoma. Pursuant to Section 4.11 of the parties' written contract, "upon the payment of forfeitures and all expenses related therewith, and the release or expungement of all bonds or undertakings any balance in the Build Up Fund[] was to be disbursed fifty percent (50%) to Defendant the remaining fifty percent (50%) to Ms. Lewis." The money in the Build Up Fund was to be distributed to Lewis according to the contract's terms, but Inman refused to disburse the funds to Lewis. Lewis filed a bankruptcy petition in Arizona on November 2, 2008, and she listed Inman as a creditor on the note and mortgage. The Bankruptcy Court entered an order on March 23, 2009, "[d]ischarging all debts and thereby permanently enjoining any listed creditor from taking action against Ms. Lewis related to the debts identified therein." Inman filed his counterclaim in this action on April 5, 2013, "claiming Ms. Lewis is indebted to the Defendant for this Note and Mortgage that was included in the bankruptcy estate." Lewis stated that a true and correct accounting of the Build Up Fund as attached to her motion shows Inman owes her $460,971.

¶6 Inman also filed a motion for summary judgment alleging the following as undisputed facts. Both Plaintiffs were Inman's employees. Lewis was employed as a bail bond agent beginning December 15, 2004, and ending December 2007 when she moved to Arizona. The parties' employment agreement "provided that the Plaintiffs retain 55% of the premium, remit 35% to the Defendant, with the remaining 10% to be held in a 'build up' fund to be held for bail bond forfeitures and costs of apprehension of defendants who did not appear." Plaintiffs' bankruptcy petition, filed in the United States Bankruptcy Court, District of Arizona, "did not disclose any claims against the Defendant nor any interest in the 'build up' fund." Inman said, "The [Plaintiffs'] bankruptcy was a no asset case . . . and the Plaintiffs were discharged on the 23rd day of March, 2009."

¶7 Inman asserted "Plaintiffs are estopped from pursuing any claims against [him] due to the failure to disclose any claims in the petition for bankruptcy." He also asserted, "The Plaintiffs are not the proper party in interest to pursue this action" because the real party in interest is the bankruptcy trustee.

¶8 After Inman died on November 22, 2013, Robert Kenneth Inman was appointed personal representative of his estate and was substituted in that capacity as the party defendant on December 19, 2014.[2]

¶9 In a separate response to Lewis's summary judgment motion, Inman says Lewis in her motion claimed an erroneous amount in controversy owed to her in the Build Up Fund. Inman says the amount in the Build Up Fund in which Lewis can claim an interest, after totaling the bond premiums collected, applying the 10% going to the Build Up Fund, and deducting half the cost of bond forfeitures and apprehension costs, is $30,575.97. Inman in his response does not specifically identify which facts are controverted in Lewis's statement of undisputed facts as required by Rule 13, Oklahoma District Court Rules, 12 O.S. Supp. 2013, ch. 2, app.[3]

¶10 In her response to Inman's motion for summary judgment, Lewis also fails to admit or deny Inman's statement of undisputed facts. She does set out her own list of facts she claims are in dispute, many of which are the same facts she claimed were undisputed in her motion for summary judgment.

 

¶11 We now summarize and quote the facts she claims are in dispute. Section 4.11 of the contract provides that any balance in the Build Up Fund was to be disbursed fifty percent to Inman and fifty percent to Lewis. "[T]he Build Up Fund should have been distributed according to the terms of the contract," but Inman refused to pay Lewis the funds he owed her. She filed a bankruptcy petition in the Bankruptcy Court for the District of Arizona and listed Inman as a creditor for the note and mortgage. The Bankruptcy Court discharged her debt on
March 23, 2009, "thereby permanently enjoining any listed creditor from taking any action against Ms. Lewis related to the debts identified therein." Inman filed his counterclaim on April 5, 2013, in which he claimed Lewis was indebted to him for the note and mortgage. "Inman was aware of the facts surrounding the accounting of the fund. (Monies and the account were in his possession; so he knew or should have known.)" Although "Inman was a trustee to Ms. Lewis of the funds he held," he "failed to disclose the account of the build-up fund to
Ms. Lewis, failed to disclose the account of the build-up fund to the bankruptcy trustee and failed to disclose the build-up fund account to the bankruptcy court." When Lewis filed bankruptcy, she "had no knowledge of the amount of money in the buildup fund, or if there was any money in the build up fund." "The documents currently being used to determine the amount of monies owed were a result of the present lawsuit and uncovered in discovery of the financial information that was never disclosed by Eddie Inman to me prior to the bankruptcy." Inman never disclosed the Build Up Fund to her or the Bankruptcy Court even though he had full knowledge of the money in the Build Up Fund. Although Inman was the trustee of the Build Up Fund and had full knowledge and control of the amount of money in the Build Up Fund, he failed to account for the fund to her, the bankruptcy court, or the trial court in this action.

¶12 Lewis explained her claim: (1) "[a]ll bonds written had to be reported to the Insurance Department in Oklahoma City, Ok.;" (2) "[t]he Rogers County District Court had to report the same and the reports had to match;" (3) "[t]he bond would be written by power of attorney on Eddie Ray Inman for the face amount of the bond (the entire amount)"; (4) and "[t]he client would pay the bondsmen a percentage (10-15%) called a premium" and ten percent "of the premium was paid to Mr. Inman to go into the Build-up Fund." The Build Up Fund was intended to cover bond forfeitures, and if a forfeiture occurred, the bondsman then had to return the defendant within 90 days or forfeit the amount of the bond on the 91st day. If that happened, "[t]he bondsman had an additional 89 days in which to return the defendant to the jurisdiction of the court to file a motion to receive a remitter." A bondsman's liability on a bond continues until it is exonerated. "When all bonds were exonerated, by agreement with Mr. Inman the build-up fund would be releas ed to the bondsman." Lewis terminated her agreement with Inman in December 2007, at which time he advised her she had no money in the Build Up Fund. She called Inman in 2008 and 2009 to see if he could release money from the Build Up Fund, and he told her she had no money in the Build Up Fund. Inman told her "not to call again and [she] would never get money from the build-up fund." "Approximately 4 years after my termination with Mr. Inman I asked that a case be filed to get an accounting of the build-up fund."

¶13 She asserted there has been no determination of the Build Up Fund's status and no legal determination of when "her share of buildup fund contractually commenced to run." Although Inman told her she had no contractual claim to monies in the Build Up Fund before she filed bankruptcy, her "contractual claim to the buildup fund could not occur until post-bankruptcy when all bonds were exonerated by agreement with Inman." She asserted, "There is a question of fact as to the status of the contractual nature of when Ms. Lewis' claim first commenced (factually and legally)."

¶14 Lewis argued that the doctrine of judicial estoppel is not applicable:

[T]he application of such judicial estoppel is usually justified when the "creditors" were not told initially of a pending lawsuit or claim. Here, however, the largest creditor, main creditor, of Ms. Lewis' bankruptcy is the defendant in this action. Inman was identified as a creditor in the bankruptcy. However, Inman was also well aware of the "build-up fund", the amount in the build-up fund, and withheld that information from the bankruptcy trustee in hopes of skirting free and clear of over $400,000 that he would have had to pay into the bankruptcy case.

Lewis further asserted Inman has unclean hands and that the "bankruptcy trustee may seek to reopen the bankruptcy."

¶15 Lewis filed a supplement to her motion for summary judgment and response to Inman's motion for summary judgment. She attached a spreadsheet and her affidavit stating, "The attached spreadsheet is true and correct and amends or corrects the previous spreadsheet." She further stated, "I believe based on the information provided to me that the amount owed of $46,099.60 is the correct amount owed to me by the Defendant, Eddie Ray Inman."

¶16 Lewis filed a second supplement in which she moved the "Court to deny Inman's Motion for Summary Judgment as Mr. Inman's claim for judicial estoppel is inappropriate as the Bankruptcy case has now been reopened as evidenced by the attached exhibits." Lewis attached documents from the United States Bankruptcy Court for the District of Arizona showing the bankruptcy case had been reopened.

¶17 Inman filed a supplement to the summary judgment briefing in which he again asserted that Plaintiffs never made a payment and had defaulted on the note and mortgage. He alleged:

Well after the Plaintiffs' employment with Eddie Inman terminated, on or about August 19, 2008, the Buildup Fund was closed by Eddie Inman, who, with the agreement of the Plaintiffs, exercised his right to set off his claim under the Inman Loan against the Plaintiffs' claims under their employment agreements. The amount in the Buildup Fund at that time was less than the amount claimed by the Plaintiffs.

He said Plaintiffs failed to account for the costs of apprehension and their share of bond forfeitures when they calculated the amount they claimed he owed them when the Build Up Fund was closed. He further asserted Plaintiffs "did not list a claim against Eddie Inman as an asset of their bankruptcy estate."

¶18 Inman argued that the principal amount of the note was $50,000 and Plaintiffs' claim against him in this action was for $46,099.60. He contends, "While the Plaintiffs' claim amount is disputed, it is undisputed that Eddie Inman's claim against them was larger than their claim against him when the setoff occurred." He argued that the doctrine of setoff should be applied.

¶19 In her response, Lewis argued the contract provided the Build Up Fund was not to be paid until all the bonds were exonerated. She attached a spreadsheet showing some bonds were not exonerated until after her bankruptcy case was concluded. Until the hearing on the summary judgment motions where this belief was corrected by the court, Lewis maintained one bond was still not exonerated, the money in the Build Up Fund was not due and owing because all of the bonds were not exonerated, and setoff was therefore not proper.

¶20 A hearing was held on May 31, 2017. After the trial court heard arguments on the motions for summary judgment, it announced its findings. The court found these facts to be undisputed:

The parties entered into an employment contract in December of 2004 whereby the premiums obtained from bail bonds would be split 55 percent to be retained by plaintiff; 35 percent would be paid to Eddie Inman, and the remaining 10 percent would be paid into the build up fund.

Pursuant to Section 5.4 of the contract, if the agreement was not terminated, it would not cause the build up fund to be paid to either party until such time as all bonds and undertaking of the employees shall be released, exonerated, and/or paid pursuant to the terms of the agreement.

Although plaintiff claims in the paperwork that there is a bond still outstanding in Rogers County Case No. CF-2005-678, and thus the build up fund is not yet due to her, a review of the docket sheet reveals that the bond in this case was exonerated by minute of
October 16, 2006.

Further noted that, if plaintiff's argument were true, the plaintiff's case would be premature and that there would be no case or controversy at this time.

For purposes of this motion, the defendant agrees to use the damage amount claimed by the plaintiff of approximately $46,000. Mortgage claim listed in the Plaintiff's bankruptcy paperwork indicates they owe $52,000 to the defendant.

The common-law doctrine [of] setoff grants the creditor the right to offset a mutual debt, owing by such creditor to the debtor so long as both debts arose before commencement of the bankruptcy action and are indeed mutual, valid, and enforceable.

Both sides agree that there is a build up fund to which plaintiff is entitled to monies. Further, both sides agree that the plaintiff owed defendant around $50,000 for their second mortgage. Plaintiff argues that the note and mortgage can't be used here since the obligation was discharged in bankruptcy. Contrary to the plaintiff's contentions, the defendant's [sic] may not seek to directly collect the funds due [to] him, but he may pursue the issue of setoff, as he is doing here.

The trial court found that "there are mutual debts to and flowing to and from each party and these debts existed prior to the bankruptcy." It further found, "Although the exact amount of the build up fund was unknown, the obligation certainly existed prior to the bankruptcy, which is the operative fact here." The court concluded, "Both debts are valid and enforceable and the parties are in privity of contract." It noted, "Regardless of when the setoff occurred, whether it was prior to the bankruptcy or last week, it was proper the right to setoff survives the bankruptcy, and the Court grants the defendant's motion for summary judgment in that regard."

¶21 In an order filed on June 7, 2017, the court granted Inman's motion for summary judgment and denied Plaintiffs' motion for summary judgment. The court entered judgment for Inman against Lewis and Sartin.

¶22 On June 12, 2017, Lewis filed a motion to reconsider pursuant to District Court Rule 17 and 12 O.S. § 651(6). She again argued that several bonds were not exonerated until after her bankruptcy discharge. She claimed "Inman did not have any legal right to unilaterally close the Buildup Fund" and that "Inman illegally transferred the trust monies to himself to create a false offset." She asserted the debt from the $50,000 loan from Inman was discharged in bankruptcy. Lewis argued that there was no agreement or settlement between the parties that allowed Inman to take the money in the Build Up Fund.

¶23 The trial court denied the motion to reconsider, and Lewis appeals.

STANDARD OF REVIEW

¶24 "A motion to reconsider may be treated as a 12 O.S. § 651 motion for new trial when the motion to reconsider is filed within a ten-day period after the filing of a judgment, decree or appealable order." Andrew v. Depani-Sparkes, 2017 OK 42, ¶ 15, 396 P.3d 210. "A trial court's denial of a motion for new trial is reviewed for abuse of discretion." Reeds v. Walker, 2006 OK 43, ¶ 9, 157 P.3d 100. "Where, as here, our assessment of the trial court's exercise of discretion in denying defendants a new trial rests on the propriety of the underlying grant of summary judgment, the abuse-of-discretion question is settled by our de novo review of the summary adjudication's correctness." Id.

¶25 Summary judgment is properly granted "when the pleadings, affidavits, depositions, admissions or other evidentiary materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Davis v. Leitner, 1989 OK 146, ¶ 9, 782 P.2d 924. In reviewing a summary judgment, we view "all inferences and conclusions to be drawn from the evidentiary materials . . . in a light most favorable to the party opposing the motion." Id. "This Court bears 'an affirmative duty to test all evidentiary material tendered in summary process for its legal sufficiency to support the relief sought by the movant.'" Lewis v. Wal-Mart Stores East, L.P., 2009 OK CIV APP 81, ¶ 4, 225 P.3d 6 (quoting Copeland v. The Lodge Enters., Inc., 2000 OK 36, ¶ 8, 4 P.3d 695).

¶26 An appeal from an order granting summary judgment is subject to de novo review. Shull v. Reid, 2011 OK 72, ¶ 3, 258 P.3d 521. In a de novo review, we re-examine the record and the trial court's legal rulings without deference to its reasoning or result. Bronson Trailers & Trucks v. Newman, 2006 OK 46, ¶ 5, 139 P.3d 885.

ANALYSIS

¶27 Lewis raises three issues for review. First, the trial court erred when it found Inman "was entitled to an offset when there is no dispute that no debt was owed by Defendant to Plaintiff before Plaintiff filed bankruptcy." Second, the trial court's summary judgment was improper "under the undisputed facts wherein Defendant took the monies held in trust in the Build-Up Fund and paid himself without the knowledge or consent of the Plaintiff; in order to offset a promissory note defaulted by Plaintiff and owed to Defendant prior to the Plaintiff filing bankruptcy." Third, Lewis asks us to consider "[w]hether summary judgment was proper as to Plaintiff's claims for an accounting, breach of payment of services and breach of fiduciary duty."

¶28 The trial court found the doctrine of setoff should be applied and granted summary judgment in Inman's favor, finding that Lewis's obligation to Inman exceeded his obligation to her from the Build Up Fund. The United States Supreme Court has stated, "The adjustment of defendant's demand by counterclaim in plaintiff's action rather than by independent suit is favored and encourage[d] by the law. That practice serves to avoid circuity of action, inconvenience, expense, consumption of the courts' time, and injustice." Chicago & N.W. Ry. Co. v. Lindell, 281 U.S. 14, 17, 50 S. Ct. 200, 201, 74 L. Ed. 670 (1930). The Oklahoma Supreme Court has also long applied the doctrine of setoff:

"The power to allow a set-off of debts by a court of equity exists independent of the statute, where grounds of equitable interposition are shown, such as fraud, embarrassment in enforcing the demand at law, or special circumstances, such as insolvency or nonresidence, which render it probable that party will lose his demand and be compelled to pay the demand of the other."

State Bank of Dakoma v. Weaber, 1926 OK 200, ¶ 16, 256 P. 50 (quoting Caldwell v. Stevens, 1917 OK 250, ¶ 0, 167 P. 610 (syl. no. 1 by the Court)). The concept of setoff is "grounded in concepts of fairness and equity" and "'allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A.'" In re Myers, 362 F.3d 667, 672 (10th Cir. 2004) (quoting Citizens Bank v. Strumpf, 516 U.S. 16, 18, 116 S. Ct. 286, 289, 133 L. Ed. 2d 258 (1995)). "In the bankruptcy context, setoff allows one creditor to be paid more than other creditors," but "[t]he Bankruptcy Code does not create a federal right of setoff." In re Myers, 362 F.3d 667, 672 (10th Cir. 2004). Instead, "the Code simply preserves setoff rights that might otherwise exist under federal or state law." Id.

¶29 The Bankruptcy Court apparently did not consider the issue of setoff before Lewis's bankruptcy discharge because Lewis in her bankruptcy schedules did not list the Build Up Fund or the debt Inman owed her. At the May 2017 hearing on the parties' motions for summary judgment, counsel for both parties acknowledged that the bankruptcy case had been reopened to list the Build Up Fund as an asset in the estate and to establish the bankruptcy trustee as the proper party either to pursue the money Lewis was entitled to in the Build Up Fund or to abandon it. Counsel also agreed that the trustee declined to pursue the Build Up Fund on behalf of the bankruptcy estate, and the claim to money in the Build Up Fund was abandoned. The controversy then returned to the Rogers County District Court for the resolution of the parties' competing claims and the trial court's resolution of the summary judgment motions.

¶30 It is undisputed that Plaintiffs failed to pay the $50,000 note due on June 1, 2008, as required by the note, and RCB Bank filed a foreclosure action on its first mortgage on the property against Plaintiffs, ultimately taking judgment against them on October 20, 2008. Inman claimed "the Plaintiffs contacted the Defendant about the foreclosure and made an agreement to have the Defendant release his mortgage . . . in return for the transfer of all the [Plaintiffs'] claims to the build up fund." Inman says he relied on Plaintiffs' statements and released the mortgage. A copy of the mortgage release recorded in Rogers County on September 26, 2008, is attached to Inman's answer and counterclaim. Inman also presented in his answer and counterclaim a copy of an agreement containing these terms, but that agreement is undated and unsigned. Although Lewis admitted a debt was owed, she maintains she never agreed to this exchange but claims her debt was discharged in bankruptcy and not through any agreement with Inman. Lewis does not dispute Inman's explanation for his release of the second mortgage, nor does she offer her own account of why the mortgage was released.

¶31 Lewis and Inman agreed in their summary judgment briefing that the amount Lewis was entitled to from Inman in the Build Up Fund was $46,099.60, and at the hearing, the trial court accepted this as the correct amount. The trial court also accepted the $52,000 amount Lewis listed in her bankruptcy schedule as the debt she owed to Inman on the note and second mortgage, a figure Inman did not dispute. The court further found that, contrary to Lewis's argument that Inman cannot use Lewis's note obligation as a setoff because it was discharged in bankruptcy, Inman may not "seek to directly collect the funds due him, but he may pursue the issue of setoff, as he is doing here." Holding that "[r]egardless of when the setoff occurred, whether it was prior to the bankruptcy or last week, it was proper the right to setoff survives the bankruptcy," the court granted Inman's motion for summary judgment. This in essence allowed Inman to set off the $46,000 he owed to Lewis against the $52,000 Lewis had failed to repay him under the note.

¶32 With or without Lewis's assent, Inman had the right to this setoff, and the bankruptcy filing after the setoff did not alter this outcome. There can be no question that, although the exact amount might then have been in question, substantial funds had accrued to Lewis's benefit in the Build Up Fund before she filed bankruptcy and that Inman had set off any amounts he owed her against the amount she owed him on the defaulted note. Lewis's assertion that the right to setoff did not survive the bankruptcy is not correct. The case of In re Davidovich, 901 F.2d 1533 (10th Cir. 1990) tells us:

The common law doctrine of setoff, as recognized in section 553 of the Bankruptcy Code, grants a creditor the right "to offset a mutual debt owing by such creditor to the debtor" so long as both debts arose before commencement of the bankruptcy action and are indeed mutual. 11 U.S.C. § 553(a). . . . This mutuality requirement mandates that the debts involved be between the same parties standing in the same capacity . . . and that each debt be valid and enforceable. . . . The mutual debt need not, however, have arisen out of the same transaction in order for setoff to be available under the statute.

Id. at 1537 (citations omitted). The circumstances under which Inman exercised his common law right of setoff meet these criteria. As the Davidovich Court stated, "the right to assert a setoff against a mutual, prepetition debt owed by the bankrupt estate survives even the Bankruptcy Court's discharge of the bankrupt's debts." Id. at 1539. And, although Lewis argues that the debt Inman owed to her was not presently due before the bankruptcy because a handful of bonds had not been exonerated, she was certainly owed a substantial sum that had accrued to her under the parties' agreement which Inman could not repudiate.

¶33 As Inman points out, even if he could not affirmatively collect on the note after Lewis's bankruptcy discharge, he could certainly defensively assert the uncollected amount as a setoff against Lewis's claim to the Build Up Fund. Although Lewis contends it would be inequitable to allow the setoff, we fail to see how this is so. A creditor's right to setoff is "a universally recognized right grounded in principles of fairness that [is] not, with a few limited exceptions, affected by the Bankruptcy Code." Id. We agree with Davidovich that it would "'be unfair to deny a creditor the right to recover an established obligation while requiring the creditor to fully satisfy a debt to a debtor.'" Id. (quoting In re G.S. Omni Corp. v. United States, 835 F.2d 1317, 1318 (10th Cir. 1987).

CONCLUSION

¶34 The undisputed material facts and applicable law are just as the trial court described them, requiring the entry of summary judgment in Inman's favor and the denial of Lewis's motion to reconsider. The decisions are affirmed.

¶35 AFFIRMED.

THORNBRUGH, C.J., and FISCHER, J., concur.

FOOTNOTES

[1] Plaintiff Terry Lee Sartin is not a party to this appeal.

[2] For ease of reference, we continue to refer to Defendant as Inman.

[3] Rule 13(b), Oklahoma District Court Rules, 12 O.S. Supp. 2013, ch. 2, app., provides that when opposing a motion for summary judgment, "the adverse party or parties shall set forth and number each specific material fact which is claimed to be in controversy and reference shall be made to the pages and paragraphs or lines of the evidentiary materials."






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2009 OK CIV APP 81, 225 P.3d 6, LEWIS v. WAL-MART STORES EAST, L.P.
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1989 OK 146, 782 P.2d 924, 60 OBJ 2833, Davis v. Leitner
Discussed
 1917 OK 250, 167 P. 610, 64 Okla. 287, CALDWELL v. STEVENS
Discussed
 2006 OK 43, 157 P.3d 100, REEDS v. WALKER
Discussed
 2006 OK 46, 139 P.3d 885, BRONSON TRAILERS & TRUCKS v. NEWMAN
Discussed
 2011 OK 72, 258 P.3d 521, SHULL v. REID
Discussed
 2017 OK 42, 396 P.3d 210, ANDREW v. DEPANI-SPARKES
Discussed
 2000 OK 36, 4 P.3d 695, 71 OBJ 1172, Copeland v. The Lodge Enterprises, Inc.
Discussed
 1926 OK 200, 256 P. 50, 125 Okla. 186, STATE BANK OF DAKOMA v. WEABER
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 651, New Trial - Definition - Causes for
Discussed


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA